UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:18-cv-1646-ORL-22-KRS

RIVER CROSS LAND COMPANY, LLC, a
Florida Limited Liability Company,

    Plaintiff,

v.

SEMINOLE COUNTY, a Political
Subdivision of the State of Florida,

    Defendant.
_____/

**PLAINTIFF, RIVER CROSS LAND COMPANY, LLC'S, RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND ALTERNATIVE
MOTION TO STRIKE, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, River Cross Land Company, LLC, a Florida limited liability company ("River Cross"), by and through its undersigned attorneys, and pursuant to M.D. Fla. R. 3.01(b), hereby files its *Response in Opposition to Defendant's Motion to Dismiss and Alternative Motion to Strike, and Incorporated Memorandum of Law*, and states as follows:

## I. INTRODUCTION

On October 2, 2018, River Cross filed its *Complaint* (the "Complaint") against Defendant, Seminole County, a political subdivision of the State of Florida (the "County"), seeking injunctive relief and damages for violations of the Fair Housing Act (the "FHA"), 42 U.S.C. §§ 3604 and 3613. [ECF No. 1.] In the Complaint, River Cross alleges that the County violated the FHA through its denial of River Cross' application for a rezone and a comprehensive plan amendment related to the property located in the County (the "Application"), as more specifically described in the Complaint, based upon the enforcement of the County's Rural Boundary Line, which was

1

established by the County Ordinance No. 2004-36, Sec. 1(d). [ECF No. 1, ¶¶ 11, 20.] As set forth in the Complaint, the implementation and enforcement of the Rural Boundary Line, and resulting denial of the Application, has an unlawful discriminatory effect in that such Rural Boundary Line perpetuates and reinforces segregated housing patterns of racial minorities in the County, and predictably results in a disparate impact on racial minorities. [ECF No. 1, ¶¶ 5-9, 20-25, 28-34, 37-39, 42-45, 48-50.] Based upon this discriminatory effect, River Cross alleges that the County's denial of the Application violated the FHA. [ECF No., ¶¶ 28-34, 37-39, 42-45, 48-50.]

On October 24, 2018, the County filed its *Motion to Dismiss and Alternative Motion to Strike* (respectively, the "<u>Motion to Dismiss</u>" and the "<u>Motion to Strike</u>"; collectively, the "<u>Motions</u>"). [ECF No. 8.] In the Motion to Dismiss, the County requests the Court to dismiss the Complaint on the following four (4) grounds: (1) River Cross lacks standing to bring its claims; (2) River Cross's claims are not ripe; (3) River Cross failed to plead necessary facts to state a claim; and (4) River Cross's injunctive relief claims are barred. In the Motion to Strike, the County alternatively moved this Court to strike Paragraph 10 of the Complaint. As will be established herein, the Motions should be denied in all respects as (1) River Cross has standing to maintain the causes of action under the FHA, (2) the causes of action under the FHA are ripe for adjudication, (3) River Cross sufficiently states causes of action under the FHA, and (4) River Cross's claims for injunctive relief are specifically allowed under the FHA. Additionally, Paragraph 10 of the Complaint should not be stricken. Despite the County's arguments to the contrary, Paragraph 10 simply recites a true factual allegation relating to the County and its history of segregation, which is directly related to the claims set forth in the Complaint.

Of import, in the Motion to Dismiss, the County completely ignores River Cross's allegations that the Rural Boundary Line violates the FHA because it perpetuates and reinforces

2

segregated housing patterns of racial minorities in the County. In fact, there is not one mention or denial that the Rural Boundary Line perpetuates segregation. The County apparently has chosen completely to ignore those allegations.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

A motion to dismiss *may only* be granted when it appears *to a certainty* that the plaintiff would not be entitled to recover under *any* state of facts which could be proved in support of his or her claim. *E.g., Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed.2d 80 (1957). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and does not require plaintiffs to set forth detailed factual allegations or prove every fact that will ultimately be necessary to prevail on the merits of their claims. *See Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (holding that "a complaint attacked by a Rule 12(b)(6) motion to dismiss does **not** need detailed factual allegations") (emphasis added). Plaintiffs need to simply set forth sufficient facts that will raise the expectation that discovery will reveal the evidence necessary to establish a violation of the FHA. *See id*. at 556 (holding that while a plaintiff must include enough factual matter to suggest that the unlawful conduct was undertaken, such requirement does not impose a probability requirement at the pleading stage but simply calls for enough facts to "raise a reasonable expectation that discovery will reveal evidence" of the unlawful behavior). Further, courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555.

River Cross has sufficiently pled facts and evidence to apprise the County of its claims and state a claim under Rule 8 of the Federal Rules of Civil Procedure. Therefore, the Motion to Dismiss should be denied.

3
0894043\179383\8446884v4

## III. ARGUMENT AND MEMORANDUM OF LAW

At the outset, the County mischaracterizes River Cross' claims by fixating on the River Cross Project's[1] affordable housing component. The FHA does not protect based upon a person's economic status. *See* 42 U.S.C. §§ 3604 (a) (" … it shall be unlawful …[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of ***race, color, religion, sex, familial status, or national origin***.") (emphasis added.) Meaning, it is not the fact that the housing is "affordable" that may bring certain developments under the purview of the FHA. Rather, it is the racial identity of the residents, or potential residents, which is the relevant protected class *sub judice*, that implicates the FHA regardless of whether such persons will qualify to live in an "affordable" unit or would be seeking housing in the market rate units. As such, all emphasis on the affordable housing component of the River Cross Project is misguided. Racial minorities, regardless of their economic status, is the protected class that is damaged by the County's enactment and enforcement of the Rural Boundary Line.

### A. River Cross has standing to bring its FHA Claims.

The County contends that the Complaint should be dismissed because River Cross purportedly lacks standing under the FHA. Under the FHA, an "aggrieved person is any person who either claims to have been injured by a discriminatory housing practice or believes that such an injury is about to occur." *Bank of America Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1298 (2017) (citing 42 U.S.C §3602(i)). As recognized in the Motion to Dismiss, to have standing to bring a cause of action under the FHA, River Cross must comply with the basic "case or controversy" Article III constitutional requirements. "[T]he irreducible constitutional minimum

---

[1] The "River Cross Project" shall have the same definition as defined in the Complaint, ¶ 11.

of standing contains three elements" – (1) the plaintiffs must have suffered an injury in fact; (2) there must be causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Supreme Court has also held that "in addition to satisfying constitutional standing requirements, a plaintiff must show that the statute grants the plaintiff the cause of action he or she asserts. It is presumed that a statute ordinarily provides a cause of action only to plaintiffs whose interests fall within the zone of interests protected by the law invoked." *Bank of America Corp.*, 137 S. Ct. at 1298 (internal citations omitted). As will be established below, the Complaint alleges sufficient facts to satisfy these requirements.

I. River Cross has demonstrated its constitutional standing.

The FHA confers broad standing, which is demonstrated by the FHA's express language, the Courts' interpretation thereof, and the legislative intent. The County attempts to curtail the broad nature of standing under the FHA by axiomatically specifying that "[t]his broad standing does not mean that each and every person or entity has standing under the FHA." [ECF No. 8, pg. 8.] River Cross concedes this elementary point. However, the County does not and cannot refute that the FHA permits "any aggrieved person to bring a housing-discrimination lawsuit." *Bank of America Corp.*, 137 S. Ct. at 1303 (citing 42 U.S.C. § 3613(a)). Moreover, the County does not and cannot refute that the U.S. Supreme Court "has repeatedly written that the FHA's definition of person 'aggrieved' reflects a congressional intent to confer standing broadly." *Bank of America Corp.*, 137 S. Ct. at 1303. Even after the Supreme Court interpreted the FHA to confer broad standing, Congress elected not to curtail the FHA's broad standing when it subsequently amended the FHA, which evidences Congress' implicit adoption of the Supreme Court's interpretation. *See*

5

*id.* at 1303-04. Of note, the County does not appear to dispute that River Cross has constitutional standing in the Motion to Dismiss.

First, as set forth in the Complaint, River Cross has and will continue to suffer injuries directly because of the County's unlawful actions. Specifically, as a result of the denial of the Application, River Cross has lost the benefit of the various agreements it entered into relating to the River Cross Project, and the value of and benefit from the copious amount of time and money expended seeking the County's approval. [ECF No. 1, ¶¶ 23 and 24.] These allegations demonstrate that River Cross has suffered sufficient injuries as a result of the County's actions. *See Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 44-47 (2d Cir. 2015).

Second, River Cross' injuries are directly traceable to the County's imposition and enforcement of the Rural Boundary Line, which is unlawful under the FHA. Specifically, the County applied the discriminatory Rural Boundary Line to the Application in its denial thereof. It was this denial that injured River Cross. Consequently, there is a direct "causal connection" between River Cross' injuries and the County's actions River Cross contends is unlawful.

Finally, a decision finding the Rural Boundary Line unlawful under the FHA would redress River Cross' injuries. Such a decision would entitle River Cross to the recovery of its economic damages and mandate that the County cannot deny the Application through the enforcement of the Rural Boundary Line, which would permit River Cross to pursue the River Cross Project without interference by the unlawful policy.

As the Motion is a motion to dismiss filed under Rule 12(b)(6), the Court is to accept River Cross' allegations of fact as true; thus, River Cross has made sufficient allegations to satisfy the constitutional standing requirements, with the County does not appear to dispute.

0894043\179383\8446884v4

II. <u>River Cross has demonstrated its interests fall within the zone of interests protected by the FHA.</u>

As the County cannot challenge that River Cross satisfies the constitutional standing requirements to bring the FHA lawsuit, the County argues that River Cross does not fall within the "zone of interests" of the FHA. Despite the County's claims to the contrary, River Cross' claims fall within the zone of interest the FHA protects. As set forth in the Complaint, the County's implementation and enforcement of the Rural Boundary Line caused a disparate impact and segregative effect on racial minorities, and in particular, the County's application of the Rural Boundary Line to deny the Application, and defeat the River Cross Project, caused a disparate impact and reinforces and perpetuates segregative housing patterns because of race. [ECF No. 1, ¶¶ 25, 28, 42, 43, and 48.] The FHA makes it unlawful "[t]o refuse to sell or rent… or otherwise make unavailable or deny, a dwelling to any person because of race." 42 U.S.C. § 3604(a). Accordingly, River Cross's interests are directly within the "zone of interests" the FHA protects.

The County attempts to paint the picture that River Cross's interests are not within the "zone of interests" the FHA protects because River Cross only has an economic interest. [ECF No. 8, p. 10.] First, this is an incorrect summary of River Cross's interest – River Cross's interest is in having the River Cross Project developed, which will help alleviate segregated housing patterns in the County, and not merely be recompensed for its economic damages. [ECF No. 1, Counts II and IV, both of which seek affirmative injunctive relief.] Second, the *Bank of America* Court specifically held that claims of "financial injury" are within the "zone of interests the FHA protects." 137 S. Ct. at 1298. As River Cross's injuries stem directly from the County's unlawful conduct, River Cross has alleged sufficient allegations to establish standing.

0894043\179383\8446884v4

III.     River Cross is asserting its own rights in the Lawsuit.

In its final attempt to argue that River Cross does not have standing to bring the lawsuit, it contends that River Cross is improperly asserting the rights of third parties. This is inaccurate. As set forth in the Complaint, River Cross is not asserting the rights of anyone but itself as the developer of the River Cross Project – the County's actions are an absolute barrier to River Cross constructing the Project. The law is clear that developers, like River Cross, have standing to bring lawsuits under the FHA. *See e.g.*, *Village of Arlington Heights v. Metropolitan Housing Development, Corp.*, 97 S. Ct. 555 (1977) (holding that the real estate developer had standing to bring the FHA claims); *Hallmark Developers, Inc. v. Fulton County*, 466 F. 3d 1276 (11th Cir. 2006) (developer challenged denial of a request for rezoning asserting claims under the FHA, among others).

Confoundingly, in the Motion to Dismiss, the County cites to the *South-Suburban Housing Center v. Greater South Suburban Board of Realtors*, 935 F. 2d 868 (2nd Cir. 1991), to support its proposition that River Cross does not have standing under the FHA. Despite its summary to the Court, the *South-Suburban Housing* case specifically held that the "Realtors have fulfilled the injury in fact requirement for bringing their Fair Housing Act challenge…" *South-Suburban Housing Center*, 935 F. 2d at 880. As set forth above, the Complaint contains sufficient allegations demonstrating that River Cross was directly injured by the County's unlawful conduct.

As the allegations in the Complaint are sufficient to demonstrate that River Cross has standing to bring a FHA claim based upon the County's unlawful conduct, the Motion to Dismiss should be denied.

8
0894043\179383\8446884v4

## B. River Cross' claims are ripe.

The County next moves to dismiss the Complaint on the purported basis that River Cross's claims are not ripe. [ECF No. 8, pg. 12-15.] Going outside the four corners of the Complaint, the County alleges that its denial of the Application was not a final decision because River Cross provided incomplete information in the Application, and could have gone through the process again. [ECF No. 8, pg. 13-15.] In doing so, the County ignores River Cross' allegations in the Complaint:

> "To support its application to the County, **Plaintiff provided the County with copious amounts of supportive data and analysis for the above-stated standards**. In its supporting data and analysis for demonstration of need, **Plaintiff provided detailed data and analysis… satisfying all three (3) of the County's necessary standards for amending the Rural Boundary Line**." The Complaint, ¶ 14 (emphasis added); and

> "During said meeting, Plaintiff **introduced evidence** that the River Cross Project met all three (3) of the standards promulgated by the County Comprehensive Plan and the County's Charter." The Complaint, ¶ 19 (emphasis added).

As these allegations must be accepted as true at the motion to dismiss stage, the County's argument that the claims are not ripe because of an alleged incompleteness of the Application, which was not alleged in the Complaint, does not render the claims unripe. *See Atlantic Corp. v. Twombly*, 550 U.S. at 555 (holding that "all the allegations in the complaint are true (even if doubtful in fact)") River Cross' above-quoted allegations, accepted as true, contradict the County's allegations of the Application being incomplete. Although not required to do so under the Rules, River Cross could have attached its 400 page analysis of the River Cross Project to the Complaint or attached River Cross' expert testimony transcripts presented at the August 14, 2018, the County Board of Commissioners meeting to further demonstrate the Application's completeness and that River Cross took no shortcuts in the Application process, as the County purports. [ECF no. 8, pg. 14-

9

15.] However, under the Rules, River Cross' well-plead factual allegations suffice at the pleading stage.

Moreover, even if the Application was incomplete, which it was not, such incompleteness would not render River Cross's FHA claims not ripe. In order to state a cause of action under the FHA, a "final decision" is not necessary. Under the FHA, an "aggrieved party" is defined to be "any person who believes that such person *will be* injured by a discriminatory housing practice *that is about to occur*." 42 U.S.C. §3602(i) (emphasis added). In fact, in *Jackson v. Okaloosa County, Fl.*, 21 F.3d 1531, 1537 (11th Cir. 1994), the Eleventh Circuit held that the matter was ripe for judicial review even though the appellants had not completed the process of seeking approval for development of the site. 21 F.3d at 1541. The Eleventh Circuit recognized that in adjudicating claims under the FHA, it is not necessary for a plaintiff to exhaust their local remedies. *Jackson*, supra, 21 F.3d at n. 16; *see also Groome Resources Ltd., LLC v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000), (holding that a claim under the FHA was ripe when the challenged decision was first made "irrespective of the remedies granted in subsequent proceedings"). Moreover, housing discrimination causes such a "uniquely immediate injury" that controversies raised under the FHA are ripe regardless of the status of the local government's actions. *Assisted Living Assoc. of Moorestown, LLC v. Moorestown Township*, 996 F.Supp. 409, 427-428 (D.N.J. 1998). Accordingly, even if the Application had deficiencies, River Cross is not required to go through the process multiple times before it is authorized to bring a cause of action under the FHA for the County's discriminatory conduct. Moreover, even if a "final decision" was required, which it is not, the County has already handed down a "final decision" denying the Application, regardless of the reason for the denial.
10

In the Motion to Dismiss, the County cites to *Caron Foundation of Florida, Inc. v. City of Delray Beach*, 879 F. Supp. 2d 1353 (S.D. Fla. 2012), to support its proposition that FHA claims can be denied for ripeness if a plaintiff does not provide the municipality with all relevant information. [ECF No. 8, p. 15.] The County's reliance on *Caron Foundation* is misplaced. First, despite the County's contention to the contrary, the *Caron Foundation* Court did not dismiss a FHA claim, but rather denied, in part, a motion for preliminary injunction based upon a lack of ripeness, which is "extraordinary and drastic remedy." 879 F. Supp. 2d at 1360. Second, the *Caron Foundation* Court held that a "reasonable accommodation" claim was not ripe – not a discriminatory effects claim like the one *sub judice*. *See id*. In fact, the *Caron Foundation* Court explicitly found that the disparate treatment claim, which is akin to the discriminatory effects claim, was ripe even though the reasonable accommodation claim was not. *See id*., at 1366-1367.

Based upon the foregoing, the fact that the County generically claimed an over 400 page Application was deficit does not defeat the fact that this matter is ripe for adjudication. As such, the Motion to Dismiss should be denied.

### C. River Cross has sufficiently plead its FHA claims.[2]

Next, the County purports that River Cross has failed to adequately plead a "disparate impact" claim. The County contends that River Cross failed to adequately assert disparate impact or causation. Yet again, the County chooses to ignore River Cross's allegations in the Complaint, including the fact that River Cross is alleging that the County's actions violate the FHA both because of the disparate impact on racial minorities <u>and</u> because of the segregative effect of the Rural Boundary Line.

---

[2] The County does not challenge that River Cross sufficiently states a cause of action of violations of the FHA based upon the segregative effect of the Rural Boundary Line.

11

In *Texas Department of Housing and Community Affairs, et al. v. Inclusive Communities Project, Inc.*, 135 S. Ct. 2507 (2015), ("*Texas Department*"), the Supreme Court affirmed that liability may be established under the FHA based upon the practice's discriminatory effect <u>even if such practice was not motivated by discriminatory intent</u>. As recognized in *Texas Department*, the framework for adjudicating such disparate impact claims has been set forth by the Department of Housing and Urban Development ("HUD"):

> Under the regulation, a plaintiff first must make a prima facie showing of disparate impact. That is, the plaintiff "has the burden of proving that a challenged practice caused or predictably will cause a discriminatory effect." 24 CFR §100.500(c)(1) (2014). If a statistical discrepancy is caused by factors other than the defendant's policy, a plaintiff cannot establish a prima facie case, and there is no liability. After a plaintiff does establish a prima facie showing of disparate impact, the burden shifts to the defendant to "prov[e] that the challenged practice is necessary to achieve one or more substantial, legitimate, nondiscriminatory interests." §100.500(c)(2). HUD has clarified that this step of the analysis "is analogous to the Title VII requirement that an employer's interest in an employment practice with a disparate impact be job related." 78 Fed. Reg. 11470. Once a defendant has satisfied its burden at step two, a plaintiff may "prevail upon proving that the substantial, legitimate, nondiscriminatory interests supporting the challenged practice could be served by another practice that has a less discriminatory effect." §100.500(c)(3).

*Tex. Dep't of Hous. & Cmty. Affairs,* 135 S. Ct. at 2514-2515. "Discriminatory effect" is defined as follows: "A practice has a discriminatory effect where it actually or predictably results in a disparate impact on a group of persons or creates, increases, reinforces, or perpetuates segregated housing patterns because of race, color, religion, sex, handicap, familial status, or national origin." 24 CFR 100.500(a). As will be established below, the Complaint contains sufficient allegations to state a claim for violations of the FHA based upon the discriminatory effect of the County's actions.

    I.    <u>River Cross has sufficiently plead a disparate impact cause of action:</u>

In the Motion to Dismiss, the County contends that River Cross failed to identify a facially-neutral policy or that River Cross failed to allege that such policy was artificial, arbitrary and

12

unnecessary. [ECF No. 8, p. 16-17.] Despite this contention, River Cross specifically identifies in the Complaint the County Ordinance No. 2004-36, Sec. 1(d), and Future Land Use Policies 117 and 125 of the County's Comprehensive Plan as such policies. Given River Cross' reference to the "Rural Boundary Line" and that "the County touts the Rural Boundary Line as a means to 'maintain the rural character, lifestyle and agricultural potential of the Rural Areas of the County,'" a reasonable inference can be drawn that such policies are facially-neutral, which, in-fact, they are. Additionally, River Cross' allegations clearly raise a reasonable expectation that it will prove that said policies were "artificial, arbitrary, and unnecessary" during discovery. *See* Complaint, ¶¶ 7, 13, 25, 42, 43, 42, and 48. Accordingly, River Cross sufficiently alleges that the County utilized a "facially-neutral policy" to defeat the River Cross Project, which has an unlawful discriminatory effect.

II. <u>River Cross has adequately asserted causation.</u>

The County next argues that River Cross failed to adequately assert causation. [ECF No, 8, p. 17-19.] Once again, the County ignores the plain allegations contained in the Complaint. As set forth above, to plead a cause of action for a FHA violation based upon discriminatory effects, River Cross must demonstrate that the County's actions adversely impacted a particular minority group or that such decision had a segregative effect. *See Hallmark Developers, Inc. v. Fulton County, Ga.*, 466 F.3d 1276, 1283, 1286 (11th Cir. 2006). The Complaint sets forth the following factual allegations, which are to be accepted as true at the pleading stage:

> "Although the County touts the Rural Boundary Line as a means to 'maintain the rural character, lifestyle and agricultural potential of the Rural Areas of the County,' the Rural Boundary Line has a segregative effect and disparate impact on protected minority classes in the County. *See* the County's Comprehensive Plan, Future Land Use Policy 125." Complaint, ¶ 7;

13

> "Indeed, black persons comprise only 2.9% of the County's population living in the East Rural Area, whereas black persons comprise 10.6% of the County's population living outside of the East Rural Area. Thus, a the County resident living in the East Rural Area is 73.1% less likely to be black relative to a County resident living outside of the East Rural Area." Complaint, ¶ 8;
>
> "Likewise, Hispanic persons comprise only 6% of the County's population living in the East Rural Area, whereas Hispanic residents comprise 17.4% of the County's population living outside of the East Rural Area. Thus, a County resident living in the East Rural Area is 65.5% less likely to be Hispanic relative to a County resident living outside of the East Rural Area." Complaint, ¶ 9;
>
> "The County's arbitrary denial of Plaintiff's proposed amendments has a clear and negative disparate impact on racial minorities in the County, denying them their rights to housing." Complaint, ¶ 22; and
>
> "Moreover, based on statistical housing patterns, demographic statistics for the market area, and racial population disparities within the market area, the County's arbitrary denial of Plaintiff's amendments reinforces and perpetuates segregated housing patterns based on race." Complaint, ¶ 25.

These allegations demonstrate that the County's unlawful actions are the direct cause of River Cross's injury. To avoid this, the County cites to cases where courts rendered judgments after discovery had taken place and not on motions to dismiss. Consequently, said cases are not instructive given that River Cross has not had the benefit of discovery to obtain supportive evidence.

River Cross' above-quoted allegations are sufficient to "raise a reasonable expectation that discovery will reveal evidence" that the County's actions violated the FHA, which is what *Twombly* requires. Moreover, these factual allegations are "enough to raise a right to relief above the speculative level" as they, if ultimately proven, are sufficient to demonstrate that the County's actions violated the FHA because such actions have a disparate impact on racial minorities.[3] *See*

---

[3] Even if the Court believes that actual proof of these facts is doubtful and that recovery is remote and improbable, which they are not, such is not sufficient to warrant dismissal of the

14

*Twombly*, 550 U.S. at 555; *Hallmark Developers, Inc.*, 466 F.3d at 1286. As these factual allegations permit this Court to draw the reasonable inference that the County acted in violation of the FHA, River Cross's claims are sufficiently facially plausible to withstand a motion to dismiss. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *Twombly*, 550 U.S. at 556.

The County's reliance on *Oviedo Town Center v. City of Oviedo, Florida*, 2017 WL 3621940 (M.D. Fla. August 23, 2017), to avoid the statistical allegations in the Complaint is misplaced. First, the ruling in *Oviedo Town Center* was at the motion for summary judgment stage, not on a motion to dismiss. Second, the *Oviedo Town Center* Court did not find that a statistical disparity was insufficient to impose liability under the FHA. Rather, the Court found that imposition of the challenged policy would not cause the housing community to close down, and, as such, the racial minorities would not be disparately affected – if the community did not cease operations there would be no effect on anyone. 2017 WL 3621940, *6, *7. As set forth above, the Complaint contains sufficient statistical allegations to establish disparate impact.

Based upon the foregoing, the Complaint has sufficient allegations to state a cause of action for violations of the FHA. Accordingly, the Motion to Dismiss should be denied.

**D. River Cross' injunctive relief claims are not barred.**

Finally, the County contends that this Court lacks the injunctive power to rezone the Property[4] because such relief would encroach upon the County's legislative power. In making this argument, the County cites no supporting case law addressing FHA claims. Importantly, the FHA,

---

Complaint. *See Twombly*, 550 U.S. at 557 (holding that "of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely") (internal citations omitted).

[4] The "Property" shall have the same definition as defined in the Complaint, ¶ 11.

42 U.S.C. § 3613(c)(1), explicitly grants injunctive relief to an aggrieved person filing a civil action under the FHA:

> "In a civil action under subsection (a) of this section, if this court finds that a discriminatory housing practice has occurred or is about to occur, the court… may grant as relief, as the court deems appropriate, **any permanent or temporary injunction**, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice **or ordering such affirmative action as may be appropriate**)" (emphasis added).

On its face, § 3613(c)(1) provides this Court with broad injunctive power to redress FHA violations; it grants the power to both enjoin violators and order affirmative action. Indeed, under the FHA, "[i]njunctive relief should be structured to achieve the twin goals of insuring the Act is not violated in the future and removing any lingering effects of past discrimination," and such relief is "a matter peculiarly within the discretion of the district judge." *Marable v. Walker*, 704 F.2d 1219, 1221 (11th Cir. 1983).

Moreover, despite the County's contention to the contrary, federal courts have the power to order site-specific affirmative relief, including rezoning, for violations of the FHA. Even though the County has the legislative power to create zoning ordinances, "if local authorities fail in their affirmative obligations under federal law, judicial authority may be invoked," and "federal courts deciding exclusionary zoning cases normally have the authority to grant site-specific relief." *Metro. Housing Development Corp. v. Village of Arlington Heights*, 469 F.Supp. 836, 852-53 (N.D. Ill. 1979); *see also Huntington Branch, N.A.A.C.P. v. Town of Huntington*, 844 F.2d 926, 942 (2d Cir. 1988) (ordering a municipality to rezone a subject site and to strike from the municipality's zoning ordinance the portions that violate the FHA).

Based upon the foregoing, this Court has the power to order the rezoning of the Property under § 3613(c)(1). In denying the Application, the County applied a policy that violates the FHA

0894043\179383\8446884v4

to the Property, which caused River Cross' damages. The County has failed to perform its obligations under the FHA, and this Court must step in to rectify the County's wrongs. Accordingly, the injunctive relief River Cross seeks is not only permitted under § 3613(c)(1), it is warranted. As such, the Motion to Dismiss should be denied.

**E. This Court should deny the Motion to Strike.**

In the alternative to the Motion to Dismiss, the County moves the Court to strike Paragraph 10 of the Complaint, which reads as follows: "From 1970 until 2006, the County School District was under a consent decree from the United States ordering the desegregation of the County school system." "A motion to strike is a drastic remedy and is disfavored by the courts." *Schmidt v. Life Ins. Co. of North America*, 289 F.R.D. 357, 358 (M.D. Fla. 2012). "Therefore, a motion to strike should be granted only if 'the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Id.* (quoting *Reyher v. Trans World Airlines*, 881 F.Supp. 574, 576 (M.D. Fla. 1995).

The County contends that Paragraph 10 is racially-charged material that is highly prejudicial, comparing it to incendiary terms such as "concentration camp" and "Slave Sweatshop." *See* the Motion to Strike, pgs. 23-24. The County's analogy is perplexing. Paragraph 10 plainly states facts, in a non-inflammatory manner; there is no comparison between Paragraph 10 and the racially-charged material to which the County cites.

Further, Paragraph 10 relates to the underlying allegation in the Complaint. Paragraph 10 demonstrates that this not the first time that segregation has occurred in the County, providing background that segregation has existed in the County before, and it is allegedly occurring again under the Rural Boundary Line. Paragraph 10 will not prejudice anyone and is not aimed at

17

invoking racially-charged animus against the County; rather, it is a relevant fact. Based upon the foregoing, the Motion to Strike should be denied.

### III. CONCLUSION

Based upon the foregoing, this Court should deny the Motion to Dismiss in its entirety and order the County to answer the Complaint within ten (10) days of this Court's order on same, and deny the Motion to Strike.

Dated this 14th day of November, 2018.

    /s/ *Rebecca E. Rhoden*
    **Rebecca E. Rhoden, Esquire**
    Florida Bar No. 0019148
    **Michael D. Piccolo, Esquire**
    Florida Bar No. 1003505
    rebecca.rhoden@lowndes-law.com
    Lowndes, Drosdick, Doster, Kantor & Reed. P.A.
    215 North Eola Drive
    Post Office Box 2809
    Orlando, Florida  32802-2809
    Telephone:  (407) 843-4600
    Facsimile:   (407) 843-4444
    *Counsel for Plaintiff*

### **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 14th day of November, 2018, I electronically filed the foregoing with the Clerk of the Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notices from the Court under the CM/ECF system.

    /s/ *Rebecca E. Rhoden*
    **Rebecca E. Rhoden, Esquire**