UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RIVER CROSS LAND COMPANY,
LLC,

                Plaintiff,

v.                                    Case No:  6:18-cv-01646-Orl-22KRS

SEMINOLE COUNTY,

                Defendant.

_____

## ORDER

This cause comes before the Court on Defendant Seminole County's Motion to Dismiss (Doc. 8 ("Motion")), to which Plaintiff River Cross Land Company, LLC responded in opposition (Doc. 14). For the reasons stated herein, the Motion will be granted in part and denied in part.

## BACKGROUND[1]

Seminole County (the "County") spans approximately 220,000 acres, and like many Florida counties, is made up of denser urban pockets and less dense rural areas. (Doc. 1, ¶ 5). The eastern portion of Seminole County is predominantly rural, whereas the western portion of Seminole County is predominately urban. (*Id.*). This is by design. (*Id.*). In 2004, the County's Board of County Commissioners (the "Board") adopted and designated a rural boundary line (the "Boundary Line") in the County's Comprehensive Plan. (*Id.*). Pursuant to the Comprehensive Plan, "development on the eastern side of [the] [B]oundary [Line] (the "Rural Area") is subject to

---

[1] These facts are taken from the Complaint, the allegations of which the Court must accept as true when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Williams v. Bd. of Regents*, 477 F.3d 1282, 1291 (11th Cir. 2007).

1

land use regulations limiting density and intensity of use and limiting provisions of certain urban services." (*Id.* (quoting SEMINOLE COUNTY, FL., ORDINANCE No. 2004-36 § 1(d) (2004))).

Final authority to amend the Boundary Line lies with the Board. (*Id.* ¶ 6). Amendment to the Boundary Line is permitted only when, in the opinion of the Board, "such change is necessary" and the following three standards are met: "(1) demonstration of need; (2) location analysis of amendments; and (3) mandatory consistency with the goals, objectives, and policies of the [Comprehensive] [P]lan and regional plans." (*Id.* ¶ 13). The County touts the "Boundary Line as a means to maintain the rural character, lifestyle and agricultural potential of the Rural Areas of [the] County,"[2] but the "Boundary Line has a segregative effect" and a "disparate impact on protected minority classes." (*Id.* ¶ 7).

In 2018, River Cross, a non-minority developer, initiated a plan to construct approximately 670 acres of real property in the Rural Area ("Property") "into a mixed-used development consisting of 600 single-family residential lots, 270 townhome lots, 500 multi-family units and 1.5 million square feet of commercial uses" (the "Project"). (*Id.* ¶ 11). "The Property comprises less than 1 % of the total acreage of the Rural area[] and has a Rural-5 zoning designation." (*Id.*). River Cross "guaranteed that at least 15 percent of the residential real estate in the . . . Project would be designated as affordable housing." (*Id.*).

To complete the Project, River Cross applied to the County for: (1) an amendment to the County's Comprehensive Plan to amend the Boundary Line to remove the Property from the Rural Area; (2) an amendment to the County's Future Land Use Map to also remove the Property from the Boundary Line; and (3) a rezoning of the Property from Rural-5 to Planned Development zoning (the "Application"). (*Id.* ¶ 12). Alongside its Application, River Cross provided the County

---

[2] (Doc. 1, ¶ 7 (quoting Seminole County's Comprehensive Plan, Future Land Use Policy 125)).

with "with copious amounts of supportive data and analysis . . . thereby satisfying all three . . . of [the] County's necessary standards for amending the . . . Boundary Line." (*Id.* ¶ 14).

On July 11, 2018, River Cross met with the County's Planning and Zoning Committee, which recommended that the Board deny River Cross's Application. (*Id.* ¶ 17). A month later, the Board held a meeting to consider the Project ("Board Meeting"). (*Id.* ¶ 18). At the Board Meeting, River Cross introduced evidence that met all three standards promulgated by the County's Comprehensive Plan. (*Id.* ¶ 19). River Cross also presented statistical data demonstrating the segregative effect of the Boundary Line and the disparate impact that a denial of its Application would have on protected households. (*Id.*). Nevertheless, the Board denied River Cross's Application. (*Id.* ¶ 20). As a result, River Cross lost "the benefits of various agreements." (*Id.* ¶¶ 23).

Consequently, on October 2, 2018, River Cross filed suit against the County seeking damages and injunctive relief. (Doc. 1). In its Complaint, River Cross alleges that the County violated the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 361, by implementing and enforcing the Boundary Line, and ultimately denying its Application, which has had a disparate impact on minorities residing in Seminole County and perpetuates a history of residential segregation. (*Id.* ¶¶ 5–9, 20–22, 25, 28–34, 37–38, 42–45, 48–49).

The County now moves to dismiss the Complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). (Doc. 8). The County additionally moves to strike paragraph 10 of the Complaint pursuant to Rule 12(f). With River Cross's response (Doc. 14), the matter is now ripe for adjudication.

## 12(b)(1) MOTION

### I.      Legal Standard

Article III of the Constitution limits the jurisdiction of federal courts to cases and controversies. At the heart of the constitutional requirement for a live case or controversy are three justiciability doctrines—standing, ripeness, and mootness. *Christian Coalition of Florida, Inc. v. United States*, 662 F.3d 1182, 1189 (11th Cir. 2011). Each of these doctrines may be invoked as an attack on the Court's subject matter jurisdiction pursuant to Rule 12(b)(1). *Bd. of County Comm'rs*, No. 8:03-cv-904-T-23TBM, 2007 WL 2669210, at *6 (M.D. Fla. Sept. 6, 2007); *Doe v. Pryor*, 344 F.3d 1282, 1284 (11th Cir. 2003).

Attacks on subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990). For facial attacks, the Court accepts the complaint's allegations as true. *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys. Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). Factual attacks, in contrast, allow a court "to consider extrinsic evidence such as deposition testimony and affidavits." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). When a factual attack is made, "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Lawrence*, 919 F.2d at 1528–29. That said, "it is extremely difficult to dismiss a claim for lack of subject matter jurisdiction." *Simanonok v. Simanonok*, 787 F.2d 1517, 1519 (11th Cir. 1986).

### II.     Discussion

The FHA makes it unlawful "[t]o refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. §

4

3604(a). "An aggrieved person may commence a civil action . . . after the occurrence or the termination of an alleged discriminatory housing practice . . . ." *Id.* § 3613(a)(1)(A). An "aggrieved person" is any person who "claims to have been injured by a discriminatory housing practice," or "believes that such person will be injured by a discriminatory housing practice that is about to occur." *Id.* § 3602(i).

In the Complaint, River Cross presents itself as an aggrieved person by claiming that the County violated the FHA and harmed River Cross in the process. (Doc. 1, ¶¶ 26–50). In challenging that claim, the County first moves to dismiss the Complaint for lack of standing and ripeness. (Doc. 8 at 6–15). The Court addresses each issue in turn.

### A.      Standing

A plaintiff's standing to sue under a statute ordinarily involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." *Warth v. Seldin*, 422 U.S. 490, 498 (1975) (citing *Barrows v. Jackson*, 346 U.S. 249 (1953)). As discussed *supra*, constitutional standing is derived from the case or controversy requirement embodied in Article III. To establish constitutional standing a plaintiff must plausibly allege: (1) a concrete, actual injury-in-fact; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury can be redressed. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

Prudential standing, commonly referred to as statutory standing, "embodies judicially self-imposed limits on the exercise of federal jurisdiction." *United States v. Windsor*, 570 U.S. 744, 757 (2013) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). It is not exhaustively defined, but encompasses "the general prohibition on a litigant's raising another person's legal rights, . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law

5

invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) (quoting *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

The County does not attack River Cross's constitutional standing. It argues that River Cross lacks statutory standing because River Cross is not within the FHA's "zone of interests." (Doc. 8 at 9). More specifically, the County posits that River Cross is not an "aggrieved person" as defined under the FHA because it only has an "economic interest that is not affected by a racial interest." (Doc. 8 at 9–10). The County also argues that standing is lacking because River Cross "asserts the rights of third parties." (*Id.*). However, the County misapprehends the Complaint.

For starters, River Cross is not asserting the rights of third parties. River Cross is asserting its own rights, and it is well-established that developers, like River Cross, can bring suit under the FHA so long as they can establish standing. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 256 (1977); *Anderson Group, LLC v. City of Saratoga Springs*, 805 F.3d 34, 45-46 (2nd Cir. 2015); *Keith v. Volpe*, 858 F.2d 467, 477 (9th Cir. 1988).

Furthermore, the Supreme Court has repeatedly held that "the FHA's definition of a person 'aggrieved' reflects a congressional intent to confer standing . . . as broadly as is permitted by Article III of the Constitution." *Bank of Am. Corp. v. City of Miami, Fla.*, 137 S. Ct. 1296, 1303 (2017) (collecting cases). Therefore, there are "no prudential barriers to standing" under the FHA. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982). The "sole requirement for standing to sue under [the FHA] is the [Article III] minima"—that is, an injury fairly traceable to the actions of the defendant and a likelihood of redress if the requested relief is granted. *Id.*; *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003); *Comer v. Cisneros*, 37 F.3d 775, 788 (2d Cir. 1994).

Given the broad construction established by the Supreme Court, the Court finds that River Cross has alleged adequate facts to establish standing. River Cross claims that it suffered a concrete

6

injury when the County thwarted its plans to develop the Project and it "lost the benefits of the various agreements." (Doc. 1, ¶ 22). River Cross further alleges that its injuries are directly traceable to the County's enactment and enforcement of the Boundary Line, and the resultant denial of its Application, which has had a "segregative effect and disparate impact" on minorities. (*Id.* ¶¶ 6–9, 20–22, 29 –32, 37–39, 42–44, 48–49). As relief, River Cross requests, *inter alia*, that the Court enter judgment against the County for damages and enter a permanent injunction ordering the County to approve its Application. (*Id.* at 7–10). If granted, the requested relief would redress River Cross's alleged injuries.

Therefore, the Court finds that River Cross has alleged adequate facts to confer standing under the FHA. *See Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo*, No. 6:16-cv-1005-ORL-37GJK, 2016 WL 6996124, at *3 (M.D. Fla. Nov. 30, 2016) (denying motion to dismiss for lack of standing where a developer-plaintiff alleged that it lost the "benefits of various agreements" due to the city's denial of its request for exception from a purportedly racially-motivated policy); *see also Baytree of Inverrary Realty Partners v. City of Lauderhill*, 873 F.2d 1407, 1408–09 (11th Cir. 1989) (denying motion to dismiss for lack of standing where a non-minority developer alleged that it suffered an economic injury due to racially discriminatory zoning decisions); *cf. Nasser v. City of Homewood*, 671 F.2d 432, 437 (11th Cir. 1982) (finding that the landowner-plaintiff did not have standing, where he "showed no more than an economic interest which [was] not somehow affected by a racial interest").

### B.     Ripeness

"Ripeness is a justiciability doctrine designed 'to prevent the courts through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision

has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)).

"Determining whether [an action] is ripe for judicial review requires [the Court] to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration." *Id.* at 808. The first prong "requires a weighing of the sensitivity of the issues presented and whether there exists a need for further factual development," while the second prong "injects prudential considerations into the mix requiring [courts] to gauge the risk and severity of injury to a party that will result if the exercise of jurisdiction is declined." *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347 (2d Cir. 2005).

"Building on the foregoing, the Supreme Court has developed specific ripeness requirements applicable to certain land use disputes." *Id.* In *Williamson County Regional Planning Commission v. Hamilton Bank*, the Supreme Court held that a plaintiff cannot seek federal court review of a zoning ordinance or provision until: (1) "the government entity charged with implementing the regulations . . . reache[s] a final decision regarding the application of the regulations to the property at issue"; and (2) the plaintiff seeks "just compensation" for the alleged taking. 473 U.S. 172, 186, 194–95 (1985).

Although this ripeness paradigm was originally developed by the Supreme Court in the context of a regulatory takings challenge, courts have applied the first prong of the *Williamson County* analysis (i.e. the "finality rule") to disputes arising under a variety of statutes, including the FHA. *See e.g., Insomnia Inc. v. City of Memphis, Tenn.*, 278 F. App'x. 609, 613 (6th Cir. 2008) (noting extension of *Williamson County* holding by the Second, Third, and Seventh Circuits); *Murphy*, 402 F.3d at 349–50 (noting extension of *Williamson County* holding by the Third,

Seventh, and Ninth Circuits); *Bryant Woods Inn, Inc. v. Howard Cty., Md.*, 124 F.3d 597, 602 (4th Cir. 1997) (citing *Williamson County* and noting that an "issue is sufficiently concrete for judicial resolution once an accommodation is denied").

The Eleventh Circuit has been more cautious in its willingness to broadly apply the *Williamson County* ripeness holding to all land use and zoning matters. *See Eide v. Sarasota County*, 908 F.2d 716, 724–25 (11th Cir. 1900) (discussing the proper application of the ripeness principle to various property rights challenges). Furthermore, the Eleventh Circuit has declined to decide whether the finality rule strictly applies to FHA claims. *See Jackson v. Okaloosa Cty., Fla.*, 21 F.3d 1531, 1541 n. 16 (11th Cir. 1994) (declining to decide whether "it is unnecessary for plaintiffs to exhaust local remedies, including zoning remedies," prior to bringing a FHA claim).

Nonetheless, relying on *Williamson County*, the County argues that River Cross's Application was incomplete and, therefore, the Board's denial of the Application does not constitute a final decision. (Doc. 8 at 12–15). In support of its argument, the County submits a transcript from the Board Meeting. (*See* Doc. 8-1 ("Transcript")). Hence, the County appears to factually challenge the Court's subject matter jurisdiction. But its challenge falls flat.

In the Complaint, River Cross alleges sufficient facts to suggest that the Board's denial of its Application was final (*see, e.g.*, Doc. 1, ¶¶ 6, 14, 18–20), and nothing in the Transcript contradicts this fact-based inference. According to the Transcript, at the beginning of the Board Meeting, the senior assistant county attorney advised the Board that a denial of River Cross's Application would constitute a final "legislative decision . . . appealable to the Circuit Court" of Florida. (*See* Doc. 8-1 at 33). After this advisement, the Board held a seven-hour long hearing and considered evidence presented. (*Id.* at 34–121). Following the presentation of evidence, the Board unanimously voted to deny the Application. (*Id.* at 125).

9

Prior to the vote, one Board member—Commisioner Robert Dallari—stated that his decision was based on the fact that he "fe[lt] the [A]pplication [was] incomplete,"[3] while another Board member—Commissioner Lee Constantine—expressed that "he believe[d] less [was] more" and that the River Cross's Project "[was] not necessary and not compatible with the County's current land uses." (Doc. 8-1 at 122–123).[4] The remaining Board members did not provide an explanation for their decision. (*See generally, id.* at 121–125). But, nothing in the Transcript suggests that the Board contemplated any further actions or that its decision was not final.

Because the Transcript does not contravene allegations in the Complaint that sufficiently establish ripeness, the County has failed to successfully mount a factual challenge to the Court's jurisdiction. Therefore, the Court resolves the ripeness issue on the pleadings alone and rejects the County's argument that its decision was not final. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (explaining that the Court is "entitled to rely on the allegations in the [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing"); *Oviedo Town Ctr. II, L.L.L.P.*, 2016 WL 6996124, at *2 (resolving a 12(b)(1) motion on the pleadings alone although

---

[3] Members of the Planning and Zoning Commission ("Commission") also characterized the Application as incomplete. *See, e.g.,* Doc. 8-1 at 37 ("Because the Applicant elected not to respond to the [Development Review Committte] comments, the application is incomplete."); *id*. at 38 ("Staff finds the application to be incomplete . . . .").

[4] But members of the Commission also found that the Application did not satisfy the requirements set forth in the County's Comprehensive Plan. *See, e.g.*, Doc. 8-1, at 38 ("Staff has determined that the Standards of Review for both the Comprehensive Plan Amendments and the standards for amending the [Boundary Line] have not been met as outlined in the Comprehensive Plan's information report."); *id.* 38–39 ("Staff finds the application . . . and the request to be inconsistent with the Comprehensive Plan, the Land Development Code, and incompatible with the trend of development in the area as detailed in the staff report.").

the city-defendant framed the motion as a factual attack because "none of the evidence it propound[ed] [was] dispositive of its arguments with respect to lack of standing.").

Even if the Board decision was final, the Court cannot reasonably conclude that River Cross's claims are unripe. As noted above, the Eleventh Circuit has not determined whether the finality rule promulgated in *Williamson* strictly applies to FHA cases, but it has suggested that the finality rule does not apply in cases where, as here, the plaintiff asserts that a zoning policy violates the FHA because it was enacted with discriminatory intent and/or has a disparate impact on the availability of housing for minorities. *See Jackson*, 21 F.3d at 1541.

Accordingly, the Court denies the County's motion to dismiss for want of ripeness.

## 12(b)(6) MOTION

### I.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." A complaint "that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint does not need detailed factual allegations. Yet "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (alterations and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### II.  Discussion

The FHA prohibits racial discrimination, in selling, renting, or otherwise making a dwelling unavailable. 42 U.S.C. § 3604(a). Liability under the FHA encompasses both disparate

11

treatment and disparate impact claims. *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S. Ct. 2507, 2533 (2015); *see also Hallmark Developers, Inc. v. Fulton Cty., Ga.,* 466 F.3d 1276, 1286 (11th Cir. 2006). Disparate treatment claims require a plaintiff to establish that "the defendant had a discriminatory intent or motive." *Inclusive Cmtys.* (quoting *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009)). In contrast, disparate-impact claims challenge practices that have a "disproportionately adverse effect on minorities and are otherwise unjustified by a legitimate rationale." *Id.* at 135 S. Ct. at 2513.

"A plaintiff can demonstrate a discriminatory effect in two ways: it can demonstrate that the decision has a segregative effect or that 'it makes housing options significantly more restrictive for members of a protected group than for persons outside that group.'" *Hallmark Developers*, 466 F.3d at 1286 (quoting *Hous. Investors, Inc. v. City of Clanton, Ala*., 68 F. Supp. 2d 1287, 1298 (M.D. Ala. 1999)). In the case at bar, River Cross premises its FHA claim on the alleged discriminatory effect of the Boundary Line and the County's denial of its Application. Specifically, River Cross alleges that the County's implementation of the Boundary Line, and the consequent denial of its Application, disparately impacts racial minorities and perpetuates a history of residential racial segregation in the County. (Doc, 1, 5–9, 20–22, 25, 28–34, 37–38, 42–45, 48–49).

The County does not challenge River Cross's claim of racial segregation.[5] It argues that River Cross fails to allege a claim for disparate impact. (*See* Doc. 8 at 2, 15–23). To state a claim

---

[5] Because the County does not challenge River Cross's assertion that the County violated the FHA due to the alleged segregative effect of the Boundary Line, the Court does not address the sufficiency of those allegations. *Gailes v. Marengo Cty. Sheriff's Dep't*, 916 F. Supp. 2d 1238, 1239 (S.D. Ala. 2013) ("A defendant bears at least the initial burden of demonstrating that it is entitled to dismissal under Rule 12(b)(6)."); *see also Lyes v. City of Riviera Beach, Fla*., 126 F.3d 1380, 1388 (11th Cir. 1997) (explaining that "the onus is upon the parties to formulate arguments").

for disparate impact under the FHA, a plaintiff must allege: (1) that there statistically imbalanced practices which adversely impact a minority group; (2) identify a facially neutral policy followed by the defendant during the same period of time; (3) show how that policy is artificial, arbitrary, and unnecessary; and (4) facts that meet the robust causality requirement linking the challenged neutral policy to a specific adverse racial or ethnic disparity. *City of Miami v. Bank of Am. Corp.*, 171 F. Supp. 3d 1314, 1320 (S.D. Fla. 2016) (citing *Inclusive Cmtys.*, 135 S.Ct. at 2524, 2550; *EEOC v. Joe's Stone Crab, Inc*., 220 F.3d 1263, 1274–78 (11th Cir. 2000)).

The County first contends that River Cross fails to identify a facially-neutral policy and to allege that the policy was artificial, arbitrary, and unnecessary. (Doc. 8 at 16). The Court is not persuaded. River Cross alleges that the County implemented and enforces the Boundary Line, which is touted as a means to protect the rural areas of the County, but actually has a disparate impact and segregative effect on racial minorities. (Doc. 1, ¶¶ 7,19, 29, 30–32, 42–43, 48). According to River Cross:

> [B]lack persons comprise only 2.9% of [the] County's population living in the . . . Rural Area, whereas black persons comprise 10.6% of [the] County's population living outside of the Rural Area. Thus, a . . . County resident living in the . . . Rural Area is 73.1% less likely to be black relative to a County resident living outside of the . . . Rural Area.
>
> Likewise, Hispanic persons comprise only 6% of [the] County's population living in the . . . Rural Area, whereas Hispanic residents comprise 17.4% of [the] County's population living outside of the . . . Rural Area. Thus, a . . . County resident living in the . . . Rural Area is 65.5% less likely to be Hispanic relative to a . . . County resident living outside of the . . . Rural Area.

(Doc. 1, ¶¶ 8–9).

When taken as true, these alleges suffice to support the first three elements of its claim. However, as the County correctly notes, River Cross's claim falters on the "robust causality

requirement." (Doc. 8 at 17–20). To meet the robust causality requirement, a plaintiff must "'allege facts . . . demonstrating a causal connection' between the challenged policy and the alleged statistical disparity." *City of Miami v. Bank of Am. Corp.*, 171 F. Supp. 3d 1314, 1320 (S.D. Fla. 2016) (citing *Inclusive Cmtys.*, 135 S. Ct. at 2523–24).

Here, River Cross presents no facts indicating that the County's implementation and enforcement of the Boundary Line had a disparate effect on minorities as opposed to non-minorities. In fact, River Cross presents no comparative data at all. Instead, River Cross proceeds on the notion that because African-Americans and Hispanics comprise only 2.9 % and 10.6% of the County's population living inside the Rural Area, respectively, while African-Americans and Hispanics comprise 6% and 17.4% of the County's population living outside the Rural Area, respectively, the County's implementation and enforcement of Boundary Line has a disparate impact on minorities.

At best, however, these allegations merely suggest that more racial minorities live in outside of the Rural Area. Standing alone, such a statistical disparity is insufficient to raise an inference of liability under the disparate impact theory. *See Inclusive Communities*, 135 S.Ct. at 2523 ("[r]acial imbalance . . . does not, without more, establish a prima facie case of disparate impact") (citation omitted).

Accordingly, River Cross's FHA claims are due to be dismissed to the extent that River Cross alleges that the County's implementation and enforcement the Boundary Line had a disparate impact on minorities residing in Seminole County. *See Oviedo Town Ctr. II, L.L.L.P. v. City of Oviedo, Fla.,* No. 6:16-cv-1005-ORL-37-GJK, 2017 WL 3621940, at *1 (M.D. Fla. Aug. 23, 2017), *aff'd*, No. 17-14254, 2018 WL 6822693 (11th Cir. Dec. 28, 2018) (finding developer-plaintiffs failed to meet the robust causality requirement where they only presented statistical

evidence showing that more racial minorities lived Oviedo Town Centre than the rest of Oviedo); *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1218 (11th Cir. 2008) (affirming the district court's grant of summary judgment on plaintiff's FHA disparate impact claim because plaintiff presented no comparative evidence of discrimination);[6] *cf. Ave. 6E Investments, LLC v. City of Yuma, Ariz.*, 818 F.3d 493, 508 (9th Cir. 2016) (reversing the district court's dismissal of the developer-plaintiffs' disparate-treatment claims, where the plaintiffs alleged sufficient comparative data "indicating the City's denial of [the] [d]evelopers' application to build moderately priced housing [would] have a disparate impact on Hispanics by denying them affordable opportunities to move into communities long dominated by more affluent Whites").

## 12(f) MOTION

### I.     Legal Standard

Rule 12(f) of the Federal Rules of Civil Procedure provides that a court may strike from a pleading any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Due to their drastic nature, however, motions to strike are disfavored. *See Thompson v. Kindred Nursing Centers East, LLC*, 211 F. Supp .2d 1345, 1348 (M.D. Fla. 2002). Motions to strike are usually denied "unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. *Reyher v. Trans World Airlines, Inc.*, 881 F. Supp. 574, 576 (M.D. Fla. 1995).

An "immaterial matter" is one that has no important relationship to the claim or defense in question, *see 126th Avenue Landfill, Inc. v. Pinellas County*, No. 8:09-cv-307-T-33TBM, 2009 WL 1544030, at **2–3 (M.D. Fla. June 3, 2009), and "[p]rejudice results when the matter

---

[6] Although *Oviedo Town Ctr. II, L.L.L.P* and *Schwarz v. City of Treasure Island* were decided on summary judgment, the Court finds the rationale behind the decisions particularly instructive.

15

complained of has the effect of confusing the issues or where it is so lengthy and complex that it places an undue burden on the responding party," *see Harris v. Torus Nat. Ins. Co.*, No. 8:14-cv-1001-T-33AEP, 2014 WL 3053257, at \*3 (M.D. Fla., July 7, 2014).

## II. Discussion

In the Motion, the County requests that the Court strike Paragraph 10 of the Complaint, which states: "From 1970 until 2006, the County School District was under a consent decree from the United States ordering the desegregation of the County school system." (Doc. 1, ¶ 10 ("Statement"). River Cross argues that the Statement is: (1) "immaterial" because the Seminole County School District is a separate entity from the County; and (2) prejudicial because it is included to inflame the jury and to paint a racially charged picture about the County. (Doc. 8 at 24–25).

As River Cross points out, the Statement merely provides a glimpse into the history of the County, which was, and allegedly still is, fraught with segregation. (*See* Doc. 14 at 17). Historical facts are generally significant and relevant in cases that call into scrutiny the municipal decisions of local authorities. Therefore, the Court does not find that the Statement is immaterial. Likewise, the Court does not find that the Statement will inflame the jury. The pleadings are not given to the jury and the County will have the opportunity to object to any evidence it believes is irrelevant or otherwise subject to exclusion under the Federal Rules of Evidence if this matter goes to trial. Furthermore, should this case ultimately go to trial, the Court's charge will set forth the law to be applied by the jury.

Therefore, the Court rejects the County's motion to strike the Statement from the Complaint.

## CONCLUSION

Based on the foregoing, it is ordered as follows:

1.      Defendant Seminole County's Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**.

2.      To the extent the County seeks to dismiss River Cross's FHA claims based on allegations that the County's implementation and enforcement the Boundary Line, and the resultant denial of its Application, had a disparate impact on minorities, the motion is **GRANTED**.

3.      In all other respects, the Motion (Doc. 8) is **DENIED**.

4.      On or before Thursday, **February 28, 2019**, Plaintiff may file an amended complaint.

5.      Should River Cross fail to timely file an amended complaint, this action will proceed on River Cross's claims that Defendant violated the FHA by implementing and enforcing the Boundary Line, and the resultant denial of its Application, which allegedly had a segregative effect on minorities.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 13, 2019.


ANNE C. CONWAY
United States District Judge


Copies furnished to:

17

Counsel of Record