UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RIVER CROSS LAND COMPANY, LLC, a
Florida limited liability company,

    Plaintiff,                                   CASE NO.: 6:18-cv-1646-ACC-LRH

v.

SEMINOLE COUNTY, a political
subdivision of the State of Florida,

    Defendant.
_____/

## DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND EXPERT TESTIMONY OF DR. CHARLES D. COWAN

Pursuant to Federal Rules of Evidence 402, 403, 702 and 703, Middle District of Florida Local Rule 3.01, as well as *Daubert* and its progeny, Defendant, Seminole County, by and through its undersigned counsel, respectfully moves this Court to exclude opinions and expert testimony of Dr. Charles D. Cowan disclosed by Plaintiff, River Cross Land Company, LLC, and in support thereof states the following:

In his conclusory rebuttal report, Plaintiff's expert, Dr. Charles D. Cowan ("Dr. Cowan") argues there is a segregative effect on minorities in Seminole County but fails to provide sufficient statistics to show that such a segregative effect exists or, if it does, whether any policies or decisions of the County are causing it. His testimony further explains that the evidence he found was not segregation at all, but merely a disparity between minority populations that changes at different rates. He further admits that he cannot provide an opinion on the cause of the disparities he noticed because he never performed any analysis related to causation. Dr. Cowan finally admits he has no knowledge about how the land use entitlements process works in Seminole County. For

1

these reasons and more, his testimony is of no probative value and could only serve to confuse a jury rather than assist with understanding the relevant underpinnings of this case. As such, Defendant requests that Dr. Charles D. Cowan be prevented from testifying.

## BACKGROUND FACTS

The Complaint seeks injunctive relief and damages against Seminole County Florida for alleged violations of the Fair Housing Act (the "FHA") through its denial of Plaintiff's application to develop the River Cross Project through rezoning and a Comprehensive Plan Amendment to remove over 600 acres (the "Property") from within the Rural Boundary Line in Seminole County. Additionally, the Complaint alleges a violation of the FHA by the simple existence of the Rural Boundary Line. Importantly, the Complaint alleges a discriminatory effect that both had a Disparate Impact on Minorities and a Segregative Effect. This Court dismissed Plaintiff's claims under the Disparate Impact theory on March 15, 2019 (Doc. 21). Therefore, only the claims related to Segregative Effect remain.

The Plaintiff hired Analytic Focus, LLC to perform an expert analysis in support of its lawsuit. Dr. Stephanie Boone drafted an initial report (the "Impact Report") that Dr. Cowan adopted in its entirety and affirmed he "would not deviate from" its findings and conclusions. The Impact Report is attached hereto as Exhibit "A." Dr. Cowan's Declaration, dated August 1, 2019, is attached hereto as Exhibit "B." The only statistical analysis provided in the Impact Report is a calculation of "the percentage of population in rural areas that is minority, and comparing it to the same percentage calculated for the population in non-rural areas." Impact Report p. 3. The Impact Report solely concludes that this disparity is a Disparate Impact on minorities. *See id*. p. 5. Notably, the Impact Report is silent as to any statistics related to a Segregative Effect and *never*

uses that phrase. *See* Impact Report (concluding Disparate Impact but including no mention of segregation or Segregative Effect).

Defendant timely served the disclosure of its Expert Report by Dr. Henry H. Fishkind on September 3, 2019 (the "Fishkind Report"). A true and correct copy of the Fishkind Report is attached as Exhibit "C." For the first time, Plaintiff's sole expert – Dr. Cowan – drafted his own report in rebuttal of the Fishkind Report, which was served on Defendant on September 26, 2019 (the "Cowan Rebuttal"). A copy of the Cowan Rebuttal is attached as Exhibit "D."

The Cowan Rebuttal, for the first time, discusses segregative effect. Its purpose was to rebut Dr. Fishkind's findings that the Impact Report "fails to prove that the implementation and enforcement of the Boundary Line has had a segregative effect on minotiries." Cowan Rebuttal p. 2. Dr. Cowan's report contained three specific findings: 1) while both the rural areas and urban areas in Seminole County were becoming more diverse (that is, they had proportionately fewer whites than minorities over time), the change is faster in the urban areas; 2) a causation analysis is not necessary; and 3) an analysis relating to whether the relief sought by Plaintiff would ameliorate the segregative effect is not necessary. Cowan Rebuttal p. 3.

On October 16, 2019, Defendant took Dr. Cowan's deposition. A true and correct copy of Dr. Cowan's deposition transcript ("Cowan Dep.") is attached as Exhibit "E."

   **a. Dr. Cowan's Report and Testimony Related to Segregative Effect**

Dr. Cowan's opinion related to "segregative effect" can more accurately be described as an opinion related to "diversity." Cowan Dep. 163:2-15. "Segregative effect" is the term Dr. Cowan used in his opinion to describe different percentages of minorities that are growing or not

growing. *Id.* This is because the word "effect" is a "jargon term in statistics" that means outcome but has nothing to do with a cause and effect. *Id.*[1]

Dr. Cowan admits that the rural area *has* "bec[ome] more diverse over time." Cowan Rebuttal p. 12. According to Dr. Cowan, minority populations are growing more rapidly than the white population nationally. Cowan Rebuttal p. 5. He concluded that even if an area was becoming more diverse, if the percentage of white populations are declining less rapidly in some areas than in others, there is a "countervailing force to the national trend . . . ." *Id.* At the same time, Dr. Cowan stated that he did not consider or compare national trends to what he observed in Seminole County. Cowan Dep. 73:22-74:13.

Dr. Cowan concluded in his report that "the Boundary line appears to slow the growth of minority populations in the rural areas." Cowan Rebuttal p. 6. He attempted to show this by performing multiple calculations that show that "the percentage of White residents declined from the year-2000 level in both the rural areas and the urban areas, but the rural areas declined at a slower pace than the urban areas." *Id.* In support of the same analysis that the urban areas have increased minority populations at a faster rate than the rural area, he used the Herfindalh-Hirschman Index ("HHI") calculation. *Id.* p. 7-9. Dr. Cowan was unable to repeat his calculation of HHI at his deposition. Cowan Dep. 149:7-154:5.

---

[1] When Dr. Cowan states that he sees a "segregative effect," therefore, he means he sees a "difference," but not anything that he can say was caused or perpetuated by the County.
Q·· And to be clear, you're not saying that any
12· action or inaction of the county in this case has a
13· segregative effect?
14· MS. RHODEN:· Objection.
A·· What I'm saying is, is that I see a
16· segregative effect, I don't know if actions by the
17· County are causing it and that's as far as I can go.
Cowan Dep. 164:11-17.

4

The population in the urban areas of Seminole County "experienced significant positive population growth over the past decades. The rural areas experienced negative growth." *Id.* p. 8. The only fact issue Dr. Cowan can testify to is about "the relative diversity between the east and west side [of Seminole County] and the pace at which they're diversifying." Cowan Dep. 188:17-189:3

### b.  Dr. Cowan's Report and Testimony Related to Causation

Dr. Cowan did not perform any causation analysis related to what he believed was a "segregative effect" (which was only the difference in rates of changing minority populations). When asked whether Dr. Cowan made any findings of causation in relationship to the Rural Boundary Line, he stated that he did not and was never asked to. *See* Cowan Dep. 22:17-19 ("Well, you used the word "causation." I've never offered an opinion on causation, so I was definitely not asked that.")

Dr. Cowan "disagree[s] that a causation model is necessary." *Id.* p. 13. Instead, the only thing that Dr. Cowan is able to testify to is that there is a growing difference in the percentage of minorities between the urban and rural areas. Cowan Dep. 63:22-64:3. Dr. Cowan made no attempt to control for any variables to determine why there was a growing difference. *Id.* 64:4-9. When asked whether any of his opinions controlled for variables that could explain the differences he observed between the urban and rural areas, he stated that none of his work did and he was not offering an opinion on that. *Id.* 68:11-21. In fact, his only opinion is that there is a slower growth in the minority population in the rural area than there is in the urban area – without regard to what caused that difference. *Id.* Dr. Cowan was very clear that he, "wasn't asked to consider causative effect," in his opinions and he does not know whether the policies associated with the Rural Boundary Line are perpetuating any of the differences he noted in his opinion. *Id.* 97:16-98:11.

Dr. Cowan was not asked to determine whether the Rural Boundary Line was perpetuating a segregative effect:

> Q· · Fair enough.· Just tying up into this one, you
> 14· didn't do any study to determine whether the line was
> 15· perpetuating the disparity of the two ethnic groups you
> 16· were studying?
> 17· · · · · · MS. RHODEN:· Object.
> 18· · · ·A· · I didn't.· I was not asked to do so. I
> 19· wasn't.

*Id.* 102:13-19.

> Q· · So I want to make sure I understand what
> 19· you're saying.· So I understand that the rural rate is
> 20· changing at a -- rural diversity is becoming more
> 21· diverse less quickly than the urban -- what we call the
> 22· urban side, the nonrural side, right?
> 23· · · ·A· · There is -- yes.
> 24· · · ·Q· · Okay.· But we don't know whether the line is
> 25· causing that or perpetuating it in any way, right?
> MS. RHODEN:· Object to form.
> ·2· · · ·A· · I wasn't asked to consider that.· I was only
> ·3· asked to determine whether or not it was growing.
> ·4· · · ·Q· · Right.· Fair enough.· And I don't fault you
> ·5· for that.· I just want to make sure I understand.
> ·6· · · · · · So we're not saying that we determined that
> ·7· the line perpetuated that decision?
> ·8· · · · · · MS. RHODEN:· Object to form.
> ·9· · · ·A· · No.· The only thing we're saying is, is that
> 10· the -- that distinction and the growing segregation
> 11· exists but I'm not saying anything about causation.
> 12· · · ·Q· · Right.· Or perpetuation because you don't know
> 13· that it's actually -- that the line is actually
> 14· perpetuating; some other factor could be perpetuating
> 15· that?
> 16· · · · · · MS. RHODEN:· Object to form.
> 17· · · ·A· · Well, I don't know that one way or the other
> 18· because I haven't even looked at -- I've never looked at
> 19· causation.

*Id.* 132:18-133:19.

6

While Dr. Cowan uses the phrase "perpetuating" in his report, he does not mean causation because he does not know whether national forces or the Rural Boundary Line are "perpetuating" any differences outlined in his opinion. *Id.* 134:19-24.

> Q· · All right.· And, also, just to -- because you
> 19· used a different term, a different time, you don't know
> 20· that any actions or inactions of the County are
> 21· perpetuating a segregative effect?
> 22· · · · · MS. RHODEN:· Objection to form.
> 23· · · ·A· · No.· I just know that it seems to be
> 24· increasing, but I don't know, necessarily, that -- to
> 25· answer your question directly, I don't know that it's
> necessarily the policies.
> ·2· · · · · Oh, and then I'd like to add:· Because I
> ·3· wasn't asked to study that.

*Id.* 164:18-165:3.

Dr. Cowan cannot testify as to "whether an urban growth boundary improves segregation or doesn't." *Id.* 103:1-5.

### c. Dr. Cowan's Report and Testimony Related to Plaintiff's Ability to Affect Segregation

Dr. Cowan freely admits that "[n]o one decision may be 'causative' . . . ." Cowan Rebuttal p. 13. Specifically, he found that "one development, even a large development, will not resolve the more basic issue that the county's cumulative decisions could lead to having a segregative effect." *Id.* Resolving this dispute and allowing the Plaintiff's development will not remedy the disparity Dr. Cowan notes. *Id.*

Dr. Cowan did not perform any analysis regarding the demographics of people who would potentially live within the Plaintiff's development and cannot opine as to whether there would be minority residents or not. He was not even advised whether there would be low income housing included in the development:

> Q· · Okay.· Were you ever advised that there was
> ·2· any potential for low-income housing at this project?

7

>·3· · · ·A· · That was why I was asking for the
>·4· demographics, materials; and I was told that there was a
>·5· discussion about the potential for affordable housing in
>·6· this project, but I'm not aware that that came to
>·7· fruition and there's no marketing materials to tell me
>·8· that.
>
>12  None of your research or reports or opinions
>13· in this case relate to affordable housing?
>14· · · ·A· · They don't because I'm not aware that there
>15· are any claims regarding -- sorry -- the income of the
>16· people who might be part of this project.

Cowan Dep. 29:1-8, 12-16.

Dr. Cowan had no opinions related to affordable housing. *Id.* 170:1-3.

Finally, Dr. Cowan is unfamiliar with the policies involved in understanding what the Rural Boundary Line is. When asked to describe the line and the distinction between the urban and rural areas, he stated that the distinction was, "[j]ust that the policies in the county differ from one area to the other." Cowan Dep. 34:1-11. When asked what policies differ, Dr. Cowan responded, "I don't know." Cowan Dep. 34:12-13. When Dr. Cowan drafted his report, he did not know what the policy differences were. *Id.* 37:24-38:2. He was not asked to look at what the policies were or how they differed. *Id.* 38:15-20. Dr. Cowan does not have an opinion related to urban sprawl. *Id.* 170:4-9. Dr. Cowan has no training in urban planning. *Id.* 176:8-9. He has no knowledge of the entitlement related to land development in this case. *Id.* 176:10-12. He has no experience or training in land entitlement process. *Id.* 176:13-15.

## **DAUBERT STANDARD AND THE COURT'S GATEKEEPING FUNCTION**

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703[2]. Rule 702 requires an expert witness to be "qualified as an expert by knowledge, skill, experience, training, or education" and that:

---

[2] Federal Rule of Evidence 703 provides that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

"Expert evidence can be both powerful and quite misleading because of the [jury's] difficulty in evaluating it." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993). Thus, Federal Rule of Evidence 702 requires judges to act as gatekeepers, screening expert testimony to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." *Id.* at 589. "The importance of Daubert's gatekeeping requirement cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The trial court's "gatekeeping" role as clarified in *Daubert* "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171 (1999) (citing Fed. R. Evid. 702).

In determining the admissibility of expert testimony under Rule 702, courts in the Eleventh Circuit require a rigorous three part inquiry including, "whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Frazier*, 387 F.3d at 1260; *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1309 (11th Cir. 1999). The proponent of expert testimony bears the burden of proof to show that the testimony complies

---

Under Rule 703, "[i]f the data underlying the expert's opinion are so unreliable that no reasonable expert could base an opinion on them, the opinion resting on that data must be excluded." *In re TMI Litig.*, 193 F.3d 613, 697 (3d Cir. 1999, amended, 199 F.3d 158 (3d Cir. 2000). Plaintiff's expert did not personally observe any of the information he plans to testify on.

with all three of these requirements. *Frazier*, 387 F.3d at 1260; *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002). The Plaintiff cannot meet this burden.

"In ascertaining the reliability of a particular scientific expert opinion," in compliance with the second element of the Eleventh's Circuit's test, a court must "consider, to the extent possible: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340-41 (11th Cir. 2003).

With respect to the third element of the Eleventh Circuit's test, the Supreme Court has emphasized that "[e]xpert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful" because "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes." *Daubert* 509 U.S. at 591. (citations omitted). To be relevant, the testimony must logically advance a material part of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004).

In addition to meeting the requirements of Federal Rules of Evidence 702 and 703, the proffered expert testimony must satisfy Rules 402 and 403. Rule 402 compels the exclusion of irrelevant evidence. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  And under Rule 403, evidence, although relevant, "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Because scientific testimony

does not assist the trier of fact unless it has a justified scientific relation to the facts, the Eleventh Circuit has opined that "there is no fit where a large analytical leap must be made between the facts and the opinion." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

## ARGUMENT

Dr. Cowan's testimony fails all three prongs of the *Daubert* test for admissibility of expert testimony under Rule 702 of the Federal Rules of Evidence. First, Dr. Cowan's testimony fails because Dr. Cowan, while educated and trained in similar areas, is unfamiliar with Seminole County's policies related to the Rural Boundary Line and is unfamiliar with the land entitlements process in Seminole County. As such, he cannot provide opinions regarding whether any policies had a segregative effect when he does not even know what those policies are or how they are implemented. He has no knowledge, experience, or training in relation to the Seminole County policies that he opines perpetuate segregation.

Secondly, Dr. Cowan's testimony should be excluded because the methodology he used has not been peer reviewed, published, tested or verified. His conclusions are not generally accepted in the relevant community and are merely the ipse dixit of Dr. Cowan. The analytical gap between the data and Dr. Cowan's opinions is far too great.

Finally, Dr. Cowan's testimony fails under the final prong because the analysis of segregative effect requires a causation analysis, which he did not perform. Whether there are differences in the minority populations and the rate at which they change has no probative value without an analysis of why it has occurred. Instead, this information is highly prejudicial to the Defendant without providing any substantive relevant information.

### a. Dr. Cowan Does Not Qualify As An Expert Related to Seminole County

Dr. Cowan admits that he did not know what the Seminole County policies were related to the Rural Boundary Line. Cowan Dep. 34:1-13; 37:24-38:2. Nor does Dr. Cowan have any knowledge of the entitlement process related to land development or experience or training in land entitlement. Cowan Dep. 176:8-15. To the extent Dr. Cowan attempts to offer any opinions based on the effect that differing Seminole County policies are having on the segregation of any community, he should be excluded from doing so since he does not know what those policies are.

Despite not knowing any of the policies, Dr. Cowan's opinions conclude that it is "not the line itself leading to segregation, but rather policies that are enforced differentially in the urban and rural divisions of the county would continue the segregative effects." Cowan Rebuttal p. 3. This opinion is not based on facts, but is merely conjecture and speculation and is not admissible. *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988) (expert must know of facts which enable him to express a reasonably accurate conclusion as opposed to conjecture or speculation).

The utter lack of any meaningful investigation regarding Seminole County policies is not surprising, given that a deeper investigation would likely show that any changing disparity in minority populations in Seminole County is likely because the exact same trends are happening for different reasons nationwide. Nevertheless, that lack of independent investigation precludes the admission of Dr. Cowan's opinions. *Dart Industries, Inc. v. Acor*, 2008 WL 4539480 at *4 (M.D. Fla. Oct. 9, 2008). That Dr. Cowan's opinions are nothing more than a "regurgitation" of Plaintiff's theory of the case, is evidenced by his willingness to testify that Seminole County policies bears responsibility for any population disparity - even though he is unfamiliar with the policies and the same trend is occurring nationwide. *See Qualified Contractors*, 2005 WL 5955702 at *3 (S.D. Fla. Dec. 6, 2005).

Dr. Cowan additionally received no information regarding potential legitimate business reasons the County had for its actions (even though he did ask his client for it) and did not consider it – nor was he asked to consider it. Cowan Dep. 185:20-187:15. As such, he should be precluded from providing any testimony on that issue.

### b. Dr. Cowan's Report and Testimony Do Not Meet Required Methodology For Admissibility

Even if a witness is *qualified* as an expert regarding a particular issue, the process the witness uses in forming his opinions must be sufficiently reliable under *Daubert* and its progeny. *Kilpatrick v Breg, Inc.*, 613 F.3d 1329 (11th Cir. 2010). "The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *U.S. v. Frazier*, 387 F.3d 1244, 1264-65 (11th Cir. 2004). Reliability requires an analysis of acceptance by the scientific community, peer review and publication, potential rate of error and the existence and maintenance of standards controlling the method's use, and whether methodology has been tested. *See* supra; *Daubert*, 509 U.S. 592-94 (1993).[3]

Although experts commonly extrapolate from existing data, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ispe dixit of the expert." *Hendrix*, 609 F.3d at 1194 (citing *General Elec. Co. v Joiner*, 522 U.S. 136, 146, (1997). Where an expert's opinion "amounts to nothing more than inadmissible ipse dixit, as the only connection between the conclusion and the existing

---

[3] The *Daubert* Court identified four factors to guide district judges in assessing the reliability of an individual expert's methodology:
(1) whether the expert's methodology has been tested or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community.

13

data is the expert's own assertion," the testimony must be excluded. *Guinn v. AstraZeneca Pharm.*, 602 F.2d 1245 (11th Cir. 2010).

Dr. Cowan's entire analysis is that the rural area of Seminole County *is* becoming more diverse, but that is happening at a rate that is slower than the rate at which the urban area is becoming diverse. This is the totality of Dr. Cowan's observations. From this fact, he leaps to the unsound conclusion that there is a segregative effect that is perpetuated by the Rural Boundary Line. The reliability inquiry requires the court to independently analyze each step in the logic leading to the expert's conclusions; if the court determines that any step in the expert's chain of logic is unreasonable, his entire opinion must be excluded." *Kilpatrick v. Breg, Inc.*, 2009 W.L. 2058384, *3 (S.D. Fla. June 25, 2009). The leap from Dr. Cowan's data to his conclusions is impermissible and his conclusions are nothing more than ipse dixit. "[C]onclusions and methodology are not entirely distinct from one another," and Dr. Cowan's opinions are unreliable. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 519, 139 L.Ed.2d 508 (1997).

Dr. Cowan's opinions are also not based on sufficient facts or data, as is necessary under Fed. R. Evid. 702. He failed to conduct even a cursory analysis regarding causation or what factors may be causing or perpetuating the disparities he observed. *See supra*. He did no investigation as to diversity in other similar counties or rural and urban counties nationwide. Cowan Dep. 32:20-33:2 (Q. Did you look at any of the surrounding counties in this case? A. No. Q. Why not? A. I wasn't aware that there were any claims. I was asked to look at whether or not the line was perpetuating segregation not whether or not there was a different distribution than in other counties). His analysis provides nothing more than a spurious correlation because he did not try to control for any other variables that could account for his data. Cowan Dep. 65:15-68:21 (discussing that he did not control for immigration or birth rate or death rate); *Id.* 175:25-176:7

14

(Q. All right.· You have -- you found correlation here but you didn't find causation, right? A. I wasn't asked to consider causation. Q. Right.· But -- so what you found here was correlation? A. Yes.).

Dr. Cowan performs analysis regarding "Seminole County residents' decision to live in the rural areas (as opposed to the urban areas) and whether the decision changed after the adoption of the Boundary Line. Cowan Rebuttal p. 10. Dr. Cowan's analysis, however, does not look at changes before and after the implementation of the Boundary Line – his data begins in 2000 though the Rural Boundary was created in 1991. His analysis additionally cannot be reasonably classified as residents' "decision to live in the rural areas" because he admits that he did not review factors like the birth and death rate to see if that accounted for any of the population changes. ("I also didn't control for the death rate. So the population maybe declining because people are dying.") Cowan Dep. 67:18-19; (Q: "So in your work, in your opinions, none of them controlled for those variables that could impact and could explain the growth differential between the urban and rural areas, correct? A: True. But I'm not offering an opinion regarding that. I'm offering an opinion about the fact that the end result of whatever all those different activities are is that there's a slower growth in the minority population in the rural area than there is in the urban area.") Cowan Dep. 68:11-21. Essentially, Dr. Cowan is saying that there's a slower growth in the minority population in the rural area. It could have been due to birth and death rates, immigration, or some other national trend, but he never looked. So, any conclusion that his data in any way relate to the Rural Boundary is unreliable.

A district court may properly consider whether the expert's methodology has been contrived to reach a particular result. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 n.7 (11th Cir. 2005); *Rider v. Sandoz Pharmaceuticals*, 295 F.3d 1194, 1202 (11th Cir. 2002) ("leaps of faith"

15

unsupported by good science preclude the admission of the expert's testimony). There is no evidence that Dr. Cowan's analysis is generally accepted in the relevant community, nor has it been peer reviewed, published, tested or verified. In fact, it cannot be peer reviewed, tested or verified, because it is entirely the product of Dr. Cowan's work as an expert witness in this litigation. This Court should consider that fact when assessing the reliability of Dr. Cowan's opinions. *Florists' Mutual Insurance Company v. Lewis Taylor Farms, Inc.*, 2008 WL 875493 (M.D. Ga. March 27, 2008) (citing *Daubert v Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1997) (whether experts are "proposing to testify about matter growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying" is useful in assessing reliability)).

Dr. Cowan's unreliable opinions and failure to attempt to scientifically answer the question of whether any County actions perpetuated a segregative effect preclude the use of his report and testimony.

### c. Dr. Cowan's Report and Testimony Do Not Assist the Trier of Fact to Understand the Evidence or to Determine any Fact in Issue

Federal Rule of Evidence 702 requires that expert evidence "fit" the facts of the case, such that the opinions aid the jury in resolving factual disputes. *Daubert*, 509 U.S. at 591 (1993); *Phillips v. Am. Honda Motor Co., Inc.*, 238 F. App'x 537, 540 n.2 (11th Cir. 2007) (finding "when expert's data is not directly relevant to the matter at issue in a case, the expert's testimony does not assist the trier of fact and is therefore inadmissible under *Daubert*"). Dr. Cowan's offered opinions do not "fit" the case and should be excluded.

Dr. Cowan admits he is not offering an opinion regarding whether there is a "segregative effect" caused or perpetuated by the Rural Boundary Line or the County's denial of the Plaintiff's application and he should be precluded from attempting to do so. He has not offered any opinion,

nor do the reports or his testimony ever conclude that the complained about actions perpetuate a segregative effect on minorities. To the contrary, he plainly admits that causation and perpetuation were not reviewed or addressed.

However, at issue in this case – and the only testimony required by an expert – is whether there is a segregative effect caused or perpetuated by Seminole County's denial of Plaintiff's application to rezone the Property and a Comprehensive Plan Amendment related to the Property or the implementation and enforcement of the Rural Boundary Line. The disparities that make up the basis of Dr. Cowan's opinions have no relationship to the merits of this case and can only be prejudicial and confusing to the trier of fact.

The opinions Dr. Cowan provides relate to disparities among minorities that could possibly be explained by multiple other factors, which Dr. Cowan never attempted to consider. Throughout his report, when he uses the term "segregative effect," he really is analyzing "diversity" rather than segregation. He plainly admits that causation and perpetuation were not analyzed, yet continues to use the term perpetuation and "effect" unrelated to the material issues and in an effort to confuse the issues in this case.

Dr. Cowan additionally did not perform any analysis regarding the demographics of people who would potentially live within the Plaintiff's development, so he cannot assist the trier of fact to determine whether allowing Plaintiff's development to move forward or removing the Rural Boundary Line would have any effect on segregation. Cowan Dep. 29:1-8, 12-16; 170:1-3. None of Dr. Cowan's opinions "fit" the facts of this case and should be excluded.

## RULE 3.01(g) CERTIFICATION

In accordance with Local rule 3.01, the undersigned certifies that counsel for Defendant, has conferred with counsel for Plaintiff who did not agree to the relief sought in this Motion.

**CONCLUSION**

Dr. Cowan's opinions are inadmissible under Federal Rule of Evidence 702, unhelpful and unreliable under the *Daubert* factors, and beyond the "fit" of this case. Accordingly, this Court should exclude Dr. Cowan's opinions in their entirety.

WHEREFORE, Defendant, SEMINOLE COUNTY, respectfully requests that this Court enter an Order granting its Motion to Exclude Opinions and Expert Testimony of Charles D. Cowan and precluding Plaintiff's expert, Charles D. Cowan, from testifying about whether the denial of Plaintiff's application to rezone the Property and a Comprehensive Plan Amendment related to the Property or whether the implementation and enforcement of the Rural Boundary Line has a segregative effect.

Dated: December 2, 2019.

Respectfully submitted,

| | |
|---|---|
| */s/ Shaina Stahl* | */s/ Lynn Porter-Carlton* |
| TODD K. NORMAN | A. BRYANT APPLEGATE |
| Florida Bar No.:0062154 | *Seminole County Attorney* |
| *Lead Counsel* | Florida Bar No. 346926 |
| SHAINA STAHL | LYNN PORTER-CARLTON |
| Florida Bar No.: 77643 | *Deputy County Attorney* |
| NELSON MULLINS BROAD AND CASSEL | Florida Bar No. 0455301 |
| | Seminole County Attorney's Office |
| 390 North Orange Avenue, Suite 1400 | 1101 East 1st Street |
| Orlando, Florida 33802-4961 | Sanford, Florida 32771 |
| Phone: (407)839-4200 / Fax: (407)425 -8377 | Phone: (407)665-7254 / Fax: (407)665-7272 |
| todd.norman@nelsonmullins.com | bapplegate@seminolecountyfl.gov |
| shaina.stahl@nelsonmullins.com | lporter-carlton@seminolecountyfl.gov |
| susan.willett@nelsonmullins.com | dedge@seminolecountyfl.gov |
| *Attorneys for Defendant Seminole County* | *Attorneys for Defendant Seminole County* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 2, 2019, I electronically filed a true and correct copy of the foregoing Motion to exclude opinions and expert testimony and Supporting Memorandum of Law with the Clerk of Court by using the CM/ECF system, which will electronically serve a copy on: Rebecca Rhoden, Esq. and Michael D. Piccolo, Esq., Lowndes, Drosdick, Doster, Kantor & Reed, P.A., 215 North Eola Drive, Orlando, Florida  32801 at Rebecca.rhoden@lowndes-law.com, Michael.piccolo@lowndes-law.com, lynn.elston@lowndes-law.com, and litcontrol@lowndes-law.com (*Counsel for Plaintiff*).

*/s/ Shaina Stahl*