UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RIVER CROSS LAND COMPANY,
LLC, a Florida limited liability company,

    Plaintiff,

v.

SEMINOLE COUNTY, a political subdivision of the State of Florida,

    Defendant.
_____/

CASE NO.: 6:18-cv-1646-ACC-LRH

## DEFENDANT, SEMINOLE COUNTY'S MOTION ON ENTITLEMENT FOR ATTORNEYS' FEES AND NON-TAXABLE COSTS

Defendant, SEMINOLE COUNTY (the "County" or "Defendant"), by and through its undersigned attorneys, and pursuant to Rule 54(d)(2), 42 U.S.C. §3613(c)(2) and Rule 7.01(b) of the Local Rules of the Middle District of Florida, hereby files its Motion on Entitlement for attorneys' fees and non-taxable costs[1] against Plaintiff, RIVER CROSS LAND COMPANY, LLC ("River Cross" or "Plaintiff").

---

[1] In accordance with this Court's finding that the County is entitled to costs in its Judgment in a Civil Case entered on June 7, 2021 (DE 62), the County has contemporaneously filed a separate Bill of Costs pursuant to Rule 54(d)(1) for taxable costs under 28 U.S.C. §1920 which are not duplicated herein.

4820-5811-1215 v.1

# INTRODUCTION

This lawsuit was an unsuccessful attempt by Plaintiff to bring meritless claims of discrimination against the County premised upon its own failed commercial venture. On October 2, 2018, Plaintiff filed suit against the County alleging a violation of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604 and 363, based on the County's denial of Plaintiff's application to convert approximately 670 acres from Rural A-5 zoning to Planned Development zoning. Plaintiff alleged that the denial supposedly "perpetuate[d] a segregative effect" by preventing the development of 75 "affordable" multi-family units, even though the units made up just 15% of the multi-family residential units in the market-rate development project that Plaintiff proposed. At bottom, Plaintiff's claims were legally unfounded and wholly without merit as Plaintiff could not guarantee those housing units would be "affordable" or serve minority residents, and Plaintiff's claims were ultimately denied by this Court on June 7, 2021 because of these deficiencies[2] (DE 61 and 62).

As will be highlighted below, Plaintiff was keenly aware of the insufficiencies of its claims at the time of filing this lawsuit, yet deliberately brought the unfounded claims against the County as an abusive litigation tactic to publicly intimidate and harass the County. It is evident that Plaintiff advanced these allegations under the

---

[2] On June 7, 2021, this Court entered final judgment (DE 62)(the "Order"), finding Plaintiff shall take nothing on its claims and awarding the County its costs, based on the Order entered June 4, 2021 (DE 61)(the "Final Judgment").[2]

FHA in an attempt to intimidate the County to approve its entire development proposal after it became clear that the Planning and Zoning Commission would recommend denial of Plaintiff's application. Despite Plaintiff's efforts to hoodwink the system, its insincere decision to add "affordable housing" to its application just two days before the County Commission could not fool this Court. In fact, the frivolity of Plaintiff's claims is best described in this Court's own words: **"River Cross disingenuously used the threat of a lawsuit under the federal Fair Housing Act as the fulcrum to urge County Commissioners to approve the entire River Cross proposal for 1.5 million square feet of commercial space and 1370 densely-grouped residential units."**[3]

This Court should not turn a blind eye to Plaintiff's inappropriate use of the Court's judicial resources in a clear act of intimidation and retaliation against the County. Under federal law, Plaintiff's calculated and deliberate scheme to get another bite at its failed commercial development through filing a frivolous lawsuit does not go without repercussions. Indeed, the County is now entitled to an award of its reasonable attorneys' fees and non-taxable costs in defending the frivolous lawsuit.

As such, the County moves for an award entitling it to attorneys' fees and non-taxable costs, and seeks to recover $478,645.50 in attorneys' fees and $46,126.31 in

---

[3] (DE 61 at p. 2)(emphasis added).

non-taxable costs for defending this lawsuit. As discussed below, these figures are reasonable based on the time and labor required, the novelty and difficulty of the issues involved, and the skill requisite to perform the legal services properly and the fees customarily charged.

## ARGUMENT

### I. LEGAL STANDARD

Under Fed. R. Civ. P. 54(d)(2), a prevailing party may move for attorneys' fees and related non-taxable expenses within 14 days after the entry of judgment. Furthermore, 42 U.S.C. § 3613 governing FHA actions gives the court statutory discretion to award reasonable attorneys' fees and costs to a prevailing party on a claim brought under the FHA. A district court may in its discretion award attorneys' fees to a prevailing defendant in a FHA case "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Quality of Life Corp. v. City of Margate*, Case No. 17-CV-61894, 2020 WL 8812832, at *2 (S.D. Fla. Dec. 9, 2020)(confirming standard for awarding prevailing defendant attorneys fees pursuant to FHA is the same as in civil rights cases).

"Frivolity determinations are not subject to immutable rules but rather must be made on a case-by-case basis." *Head v. Medford*, 62 F. 3d 351, 355 (11th Cir. 1995). "Findings of frivolity have been sustained when…a motion for summary

judgment…has been granted where plaintiffs did not introduce any evidence to support their claim." *Id*. at 356. Furthermore, assertions of a constitutional claim based knowingly on a legally groundless interest are legally frivolous as a matter of law. *See id*. In addition, courts determine whether a case is frivolous "considering three factors: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full-blown trial on the merits." *Quality of Life Corp.*, 2020 WL 8812832, at *2; *Angiolillo v. Bates*, Case No. 2:08-CV-606, 2010 WL 916377, at *4 (M.D. Fla. March 11, 2010)(applying factors set forth in *Sullivan v. School Bd. Of Pinellas Cty*., 773 F.2d 1182, 1189 (11th Cir. 1985)).

## II. DEFENDANT IS ENTITLED TO ATTORNEYS' FEES AND NON-TAXABLE COSTS.

At its crux, the purpose of the heightened standard for awarding attorneys' fees to prevailing defendants under FHA claims is to not cause a chilling effect on potential minority plaintiffs. In the case sub judice, the opposite holds true: granting the County's entitlement to an award of attorneys' fees and non-taxable costs will have a chilling effect on non-minority developers who attempt to use the Fair Housing Act disingenuously.

## A. <u>Plaintiff knowingly asserted legally groundless claims devoid of supporting evidence.</u>

At its core, this Court appropriately denied Plaintiff's claims on the weight of Plaintiff's concession of its insufficiencies and failure to introduce supporting evidence to establish standing or any element of its claims. First, this Court found Plaintiff lacks standing to even sue under the FHA because Plaintiff ***concedes*** it could not guarantee the 75 housing units would serve minority residents.[4]

Second, this Court found that even if Plaintiff had standing, which it does not, Plaintiff failed to state a prima facie case because it ***admittedly*** proposed the 75 "affordable" units at the last minute for "information only," without any actual information regarding the qualifying income levels or racial make-up of the residents to be served.[5] Indeed, Plaintiff offered ***no evidence*** about the demographics of individuals who would be expected to move into the project[6] and ***no evidence*** that minorities would reside in the project.[7]

Third, this Court found that "[e]ven if River Cross ***had*** produced evidence of prospective occupants' racial demographics for the affordable housing units in other parts of Seminole County, tied to income levels or waiting lists at similar housing, there is virtually no chance the Florida Finance Corporation would approve the

---

[4] Order at p. 46.
[5] *Id.* at 54.
[6] DE 61 at 51.
[7] *Id.*

project."[8] This is because the "affordable" housing portion of the proposal was contingent on the approval of funding from the Florida Housing Finance Corporation, and Plaintiff *admitted* that if it did not receive the funding within thirty days of the issuance of the Certificate of Occupancy for the multi-family units, the units would revert to market-rate.[9]

Fourth, this Court found that "River Cross has also failed to produce *any* evidence that the County's denial of the proposal significantly perpetuates or reinforces segregation, which is also fatal to its claim."[10] Specifically, this Court emphasized that Plaintiff *lacks statistical evidence* that the County's enforcement of the Boundary Line[11] or its denial of the River Cross application "perpetuates" or "reinforces" a segregative effect on minority groups.[12] Finally, this Court found that, even if Plaintiff had produced evidence to support its segregative effect, "River Cross *does not dispute*" that that the County has a legitimate non-discriminatory interest in denying Plaintiff's proposal[13] "and River Cross has failed to propose a less-discriminatory alternative."

Accordingly, this Court's Order evinces that Plaintiff's claims were frivolous as a matter of law because Plaintiff knowingly asserted legally groundless claims

---

[8] *Id.* at 56 (emphasis added).
[9] *Id*. at 24.
[10] *Id*. at 5 (emphasis added).
[11] As defined in the DE 61.
[12] *Id.* at 92.
[13] *Id.* at 5, 92.

devoid of supporting evidence. *See Head*, 62 F. 3d at 356. On this basis alone, the County is entitled to its attorneys' fees and non-taxable costs for defending against Plaintiff's frivolous claims. However, for the sake of completion, the County will proceed to discuss how each of the *Sullivan*[14] factors weighs in favor of its entitlement.

### B. Plaintiff failed to establish a prima facie case.

As an initial matter, the Court found that Plaintiff lacked standing to even attempt to establish a prima facie case for its meritless claim to begin with, explaining, "[u]nsurprisingly, River Cross lacks standing to sue because it has not shown that the 75 units of 'affordable' or income-based housing would serve minority residents."[15] Hence, the Court was forced to analyze whether Plaintiff established a prima facie case assuming *arguendo* that Plaintiff had standing. In doing so, it found that Plaintiff failed to establish a prima facie case for each element of its segregative effect claim.

Based on the 2013 HUD Regulation, Plaintiff must have shown: "1) a segregated housing pattern based on race within a specific community based on statistics and 2) that defendant's practice 'caused' or 'perpetuated' the

---

[14] 773 F. 2d at 1189.
[15] Final Judgment at 4.

segregation."[16] This Court best illustrated in its Order the myriad reasons Plaintiff failed to state a prima facie case:

- "Assuming *arguendo* that River Cross could show it has standing to sue under the FHA—in spite of its failure to assert a 'racial interest' or race-based connection to the harm it alleges—River Cross's segregative effect claim would fail because it cannot show that the County's enforcement of the Rural Boundary to prevent urban sprawl actually 'caused,' 'reinforces,' or 'perpetuates' a 'segregative effect.'"[17]

- "Even if River Cross had standing in this FHA case, it fails to state a prima facie case because it lacks statistical evidence that the County's enforcement of the Boundary Line or its denial of the River Cross application 'perpetuates' or 'reinforces' a segregative effect on minority groups."[18]

- "…River Cross [could] not state a prima facie case because River Cross does not attempt to make a showing of 'historical practices of segregation' or comparisons of racial composition showing intentional exclusions or that the County's 'challenged practice caused this segregative effect.'"[19]

- "River Cross has also failed to produce *any* evidence that the County's denial of the proposal significantly perpetuates or reinforces segregation, which is also fatal to its claim."[20]

- "Without evidence of the County's 'perpetuation' or 'reinforcement' of segregative effect, River Cross cannot state a prima facie case and the County is entitled to summary judgment on the FHA segregative effect claim on this basis alone."[21]

- "River Cross has failed to raise a genuine issue of material fact as to the County's legitimate non-discriminatory reason for denial of the River Cross application and enforcement of the Boundary Line. Therefore, the County is entitled to summary judgment."[22]

---

[16] *Id*. at 61 (citing 24 C.F.R. § 100.500(a)(2013 HUD Reg.)).
[17] *Id*. at 57.
[18] *Id*. at 92.
[19] *Id*. at 82.
[20] *Id*. at 5 (emphasis added).
[21] *Id*. at 86.
[22] *Id*. at 90-91.

9

- "River Cross has also failed to show that the County could have met Florida's goal to avoid 'urban sprawl' through a 'less discriminatory' means."[23]

Based on this Court's Order, it is clear that Plaintiff not only failed to present a prima facie case for segregative effect under the FHA, but also that Plaintiff did so knowing the legal futility of its claims. Accordingly, the County is entitled to its attorneys' fees and non-taxable costs for being forced to defend against Plaintiff's frivolous lawsuit.

### C. Defendant did not serve an offer of judgment or proposal for settlement on Plaintiff.

The Eleventh Circuit has, in large part, held that a defendant not offering to settle generally dictates in favor of a fee award to the defendant, rather than against. *See Jerelds v. City of Orlando*, 194 F. Supp. 2d 1305, 1311 (M.D. Fla. 2002)("since the Defendants did not offer Plaintiffs a promotion or a monetary settlement, this factor weighs in favor of the Defendants"); *see also*, *Sayers v. Stewart Sleep Center, Inc.*, 140 F. 3d 1351, 1353 (weighing defendant's settlement offer in plaintiff's favor).

The County denied Plaintiff's application to re-zone the land for numerous legitimate, non-discriminatory reasons that the County specifically identified, and the Court reiterates, in over *four single-spaced* pages in the Order.[24] Nonetheless,

---

[23] *Id*. at 92.
[24] *Id*. at 19-22.

10

in a desperate move to keep its failed proposal alive, Plaintiff brought this baseless lawsuit based on non-existent discrimination in an attempt to deceive this Court and distract from the *legitimate* reasons that Plaintiff's proposal was denied—such as the County's long-standing "urban sprawl" prevention.[25] On January 24, 2020, Plaintiff served the County with a Settlement Offer (the "Settlement Offer") which contemplated the opportunity for Plaintiff to re-submit an application for the County's review and potential approval of the proposed land swap.

Notably, Plaintiff's contemplated opportunity to resubmit its application was *not* contingent on the validity of its claim under the FHA in this instant lawsuit—it is clear the County has consistently held the position that Plaintiff's claims in this action are frivolous. Rather, the County initially accepted Plaintiff's Settlement Offer to re-submit its application for potential approval contingent on Plaintiff addressing the County's issues and comments in the initial denial and showing its ability to meet the standards that the County requires. Thus, on January 31, 2020, the parties requested this Court stay the pending lawsuit and give the parties until August of 2020 to file a status report regarding whether the settlement plan could be finalized (DE 50).

Markedly, more than *four* months before this Court's deadline, the County terminated Plaintiff's Settlement Offer early on May 5, 2020 (DE 54). No other

---

[25] *Id*. at 87-92 (describing the County's long-standing goal to avoid "urban sprawl").

settlement discussions or offers occurred thereafter. Simply, based on the County's consistent position that Plaintiff's action was frivolous, the County never served Plaintiff with an offer of judgment or proposal for settlement and ultimately terminated Plaintiff's Settlement Offer. Thus, this factor weighs in favor of the County's entitlement to its attorneys' fees and non-taxable costs.

### D. The case was dismissed without a trial on the merits.

Without a full trial on the merits, this Court granted the County's Motion for Summary Judgment and denied Plaintiff's Motion for Partial Summary Judgment (DE 61),[26] and subsequently entered final judgment, finding that Plaintiff shall take nothing on its claims and that Defendant is entitled to costs (DE 62). The Eleventh Circuit predicates that findings of "frivolity" have been sustained where judgment was "decided in the defendant's favor on a motion for summary judgment." *Head v. Medford*, 62 F. 3d 351, 355 (11th Cir. 1995); *Perry v. Orange Cty.*, 341 F. Supp. 2d 1197, 1205 (M.D. Fla. 2004). This Court decided that Plaintiff's claims were not worthy of a trial on the merits (DE 61 and 62). Thus, this factor weighs in favor of the County's entitlement to its attorneys' fees and non-taxable costs for defending against Plaintiff's frivolous lawsuit.

---

[26] The Order also granted the County's Motion to Exclude the Opinions and Expert Testimony of Dr. Charles Cohen (DE 34), denied as moot the County's Motion in Limine (DE 44) and directed the Clerk to close the case.

### III. REASONABLENESS AND AMOUNT OF ATTORNEYS' FEES AND NON-TAXABLE COSTS

The Eleventh Circuit has adopted the federal lodestar approach for computing reasonable attorneys' fees. *Loranger v. Stierheim*, 10 F. 3d 776, 781 (11th Cir. 1994). "The starting point in fashioning an award of attorney's fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Id*. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id*. (internal citations omitted). "The [trial] court . . . is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

The County's counsel, Nelson Mullins Riley and Scarborough LLP (formerly Broad and Cassel) (hereinafter "NMRS") kept detailed time records in this case, which show the time and labor expended by NMRS and each of its timekeepers in this matter.[27] A review of the effort and time expended by NRMS confirms the requested fee is justified. For nearly three years, undersigned has been the attorney

---

[27] A snap-shot summary of these records, as well as the non-taxable costs, are attached as **Exhibit A**. In accordance with Local Rule 7.01(b) and (c), the County anticipates filing a comprehensive supplemental motion in support of its amount of fees and non-taxable costs within forty-five days of this Court's determination on entitlement.

for the County and has greatly benefited the County as the ultimate prevailing party in this matter. The hourly rates requested by undersigned counsel are in accordance with prevailing market rates charged by professionals with comparable skills, reputation and experience, and are reasonable considering the kind and quality of services furnished.

A primary focus for this determination is the significance of the overall relief obtained. "Where a [party] has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified." *State Nat. Ins. Co. v. White*, 2012 WL 6021462 (M.D. Fla. 2012)(citing *Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983)). It is significant to this Court's determination that Defendant obtained a final judgment in its favor and this Court found Plaintiff shall take nothing on its claims.

The amount of time the County seeks to recover spent defending this lawsuit for the past two years and nine months of **1559.4** hours was time that the County's counsel could not devote to other matters. Furthermore, due to the County's status as a governmental organization, NMRS's rates were negotiated, and as such, the County receives a discounted hourly fee for each of NMRS's attorneys and paralegals. As a result, the County's counsel was precluded from working on other matters for which they would have been paid at their usual and customary rates.

Additionally, the work necessary to achieve a successful result in this litigation was delegated to capable attorneys based on experience in an attempt to minimize costs. A partner did not perform tasks that a lower-level attorney could have performed. Investigation, preparation, research, drafting and filing were performed at the lowest cost to Defendant.

Here, the partner/of counsel rate is $275 to $450 (reduced from customary rates up to $630 per hour), the associate rate is $225 per hour (reduced from customary rates up to $360 per hour), the paralegal rate is $150 per hour (reduced from customary rates up to $240 per hour) and the practice assistant rate is $150 to $185 per hour. The average rate per hour for all timekeepers on this case is **$273 per hour**. The rates are within the range deemed reasonable in the Middle District for similar work by attorneys with similar background, experience and expertise. In fact, the Middle District has concluded that an hourly rate of $450 per hour was reasonable. *See Baez v. LTD Fin. Servs., L.P.*, Case No. 615CV1043ORL40TBS, 2019 WL 2223773, *4 (M.D. Fla. May 23, 2019); *see also*, *Lombard v. Another S. Holding Co.*, LLC, Case No. 617CV1952ORL31DCI, 2019 WL 2423612, *1 (M.D. Fla. June 10, 2019) (finding plaintiff's counsel's hourly rate of $400 reasonable); *Ferrara Candy Co. v. Exhale Vapor LLC*, No. 217CV512FTM38MRM, 2019 WL 317646, *2 (M.D. Fla. Jan. 7, 2019) (finding $425 per hour to be reasonable hourly rate).

The County also incurred **$3,375.00** in non-taxable mediation costs and **$33,350.00** in expert witness fees. Furthermore, the County incurred litigation expenses for travel, computer legal research, postage, Federal Express and courier services in the amount of **$6,077.46**. *See Amer. Charities for Reas. Fundraising Reg., Inc. v. Pinellas Cty*, 278 F. Supp. 2d 1301, 1328 (finding travel, computer legal research, postage, Federal Express and courier services are recoverable as part of an attorneys' fee award under Civil Rights claims)(citing *Cappeletti Bros. Inc. v. Broward Cty*, 754 F. Supp. 197, 198 (S.D. Fla. 1991)). The County additionally incurred statutorily required court reporting services and transcript costs in the amount of **$3,323.85** for various meetings held with the Board of County Commissioners regarding this lawsuit. §286.011(8)(c), Fla. Stat. ("The entire session shall be recorded by a certified court reporter.") and §286.011(8)(e), Fla. Stat. ("The entire transcript shall be made part of the public record upon conclusion of the litigation.").

The County has incurred **$478,646.50** in attorneys' fees and **$46,126.31** in non-taxable costs for the two years and nine months actively defending Plaintiff's frivolous lawsuit, in which a considerable amount of discovery and pleading occurred leading into the ultimate final judgment in favor of the County in this matter. The time and costs expended in this case was reasonably and necessarily incurred in successfully protecting the interests of the County.

4820-5811-1215 v.1

WHEREFORE, Defendant, SEMINOLE COUNTY, respectfully requests this Court enter an order: (i) entitling Defendant to its attorneys' fees and non-taxable costs as the prevailing party pursuant to 42 U.S.C. §3613; (ii) retaining jurisdiction for Defendant to file a supplemental motion pursuant to Local Rule 7.01(c) in support of awarding its attorneys' fees in the amount of $478,646.50 and non-taxable costs in the amount of $46,126.31; and (iii) granting any further relief this Court deems just and proper.

Respectfully submitted this 21st day of June, 2021.

**NELSON MULLINS BROAD AND CASSEL**
*Counsel for Defendant Seminole County*

*/s/ Todd K. Norman*
**TODD K. NORMAN**
Florida Bar No.:0062154
*Lead Counsel*
**SHAINA STAHL**
Florida Bar No.: 77643
**OLIVIA R. SHARE**
Florida Bar No.: 1010866
**NELSON MULLINS BROAD AND CASSEL**
390 North Orange Avenue, Suite 1400
Orlando, Florida 33802-4961
Phone: (407)839-4200 / Fax: (407)425 -8377
Todd.norman@nelsonmullins.com
Shaina.stahl@nelsonmullins.com
Olivia.share@nelsonmullins.com
Shawana.watt@nelsonmullins.com

*/s/ Lynn Porter-Carlton*
**A. BRYANT APPLEGATE**
*Seminole County Attorney*
Florida Bar No. 346926

**LYNN PORTER-CARLTON**
*Deputy County Attorney*
Florida Bar No. 0455301
Seminole County Attorney's Office
1101 East 1st Street
Sanford, Florida 32771
Phone: (407)665-7254 / Fax: (407)665-7272
bapplegate@seminolecountyfl.gov
lporter-carlton@seminolecountyfl.gov
dedge@seminolecountyfl.gov
*Attorneys for Defendant Seminole County*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of June, 2021, I electronically filed the foregoing with the Clerk of the Court pursuant to the Administrative Procedures for Electronic Filing in Civil and Criminal Cases of the Middle District of Florida using the CM/ECF system, which will send a notice of electronic filing to all counsel of record who have registered to receive notices from the Court under the CM/ECF system.

*/s/ Todd K. Norman*
**TODD K. NORMAN, ESQ.**

4820-5811-1215 v.1